Robert L. HARY

v.

The UNITED STATES.

No. 239–74.

United States Court of Claims.

March 19, 1980.

Neil B. Kabatchnick, Washington, D. C., attorney of record, for plaintiff; Richard L. Swick, Washington, D. C., of counsel.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant.

Before DAVIS, KASHIWA and SMITH, Judges.

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

DAVIS, Judge:

This is another in the crowded parade of suits by former military officers who have been separated from the service, denied promotion, or relieved from active duty, allegedly on the basis of defective officer effectiveness reports (OERs). Plaintiff Robert L. Hary was appointed a second lieutenant in the Air Force in 1958 and served on active duty until discharged in 1973. At the time of his separation he was a captain. He then enlisted as a sergeant and retired in 1979 after twenty years of active service. While serving in commissioned status he received twenty officer effectiveness reports. The ratings are set out in the margin.[1] Between July 1968 and

---

1.

| GRADE | PERIOD | OVERALL EVALUATION | |
|---|---|---|---|
| * 1st Lt | July 60–Dec. 60 | Dependable and Typically Effective | 4 |
| * 1st Lt | Dec. 60–June 61 | Dependable and Typically Effective | 5 |
| * 1st Lt | June 61–Dec. 61 | Dependable and Typically Effective | 4 |
| * 1st Lt | Dec. 61–June 62 | Dependable and Typically Effective | 5 |

August 1972 plaintiff was passed over at least four times for promotion to the temporary rank of major [2] and twice for promotion to permanent major. These passovers led to his separation as an officer on active duty. He contends that all of these passovers were unlawful, primarily because he says that a number of the OERs in his record before these selection boards were inaccurate.

Plaintiff presented this claim to the Correction Board which recommended that (1) the OER for the period September 1963 through April 1964 (April 1964 OER) be removed from plaintiff's record because it was not signed by the rating officer, (2) the actions of the selection boards challenged by plaintiff be sustained because they were not materially in error or unjust due to the presence of the voided April 1964 OER, and (3) all other relief be denied because of the insufficiency of evidence demonstrating probable error or injustice. The Assistant Secretary of the Air Force accepted in full the Board's recommendation.

In this action, now before us on cross-motions for summary judgment, plaintiff challenges the Board's decision on essentially two grounds. First, he asserts that the Board was arbitrary and capricious in failing to recommend the removal of all the OERs he says were inaccurate. Second, he contends that, even if the Board was correct in recommending that only the April 1964 OER be removed, it committed error when it failed also to recommend the voiding of the passovers which occurred while this OER was wrongfully included in his record.

It is by now established in this court that such a claimant seeking back pay on account of a separation or relief from active duty must show both that (a) there was a material legal error or an injustice [3] in the proceedings of the correction board, or other entity within the military department, which led to the adverse action against him, and also (b) that there is an adequate nexus or link between the error or injustice and the adverse action (e. g., passover and nonselection for promotion). *See Sanders v. United States*, 219 Ct.Cl. ——, ——, 594 F.2d 804, 818 (1979); *Skinner v. United States,*

| GRADE | PERIOD | OVERALL EVALUATION | |
|---|---|---|---|
| * 1st Lt | June 62–Oct. 62 | Effective and Competent | 5–2 |
| * 1st Lt | Oct. 62–March 63 | Very Fine | 6–2 |
| * 1st Lt | March 63–Sept. 63 | Very Fine | 6–2 |
| ** Captain | Sept. 63–April 64 | Very Fine | 6–2 |
| Captain | April 64–Aug. 64 | Training Report | |
| Captain | Aug. 64–Aug. 65 | Very Fine | 7–3 |
| Captain | Aug. 65–Aug. 66 | Very Fine | 7–2 |
| Captain | Aug. 66–Aug. 67 | Very Fine | 7–2 |
| *** Captain | Aug. 67–Aug. 68 | VOIDED | |
| Captain | Aug. 68–Aug. 69 | Exceptionally Fine | 8–3 |
| Captain | Aug. 69–Dec. 69 | Outstanding | 9–4 |
| * Captain | Jan. 70–Aug. 70 | Exceptionally Fine | 8–3 |
| Captain | Aug. 70–Feb. 71 | Exceptionally Fine | 8–3 |
| Captain | March 71–Feb. 72 | Outstanding | 9–4 |
| Captain | March 72–May 72 | Outstanding | 9–4 |
| Captain | June 72–Sept. 72 | Outstanding | 9–4 |

　* Challenged OERs.
　** Removed by the Correction Board
　*** Voided pursuant to AFR 31–11

---

2. There seems to be some disagreement about the number of times plaintiff was passed over for promotion to temporary major. Because of the disposition we make in the case, whether plaintiff was passed over four or five times is not important.

3. We can consider an "injustice" only if the claimant has sought relief from a Correction Board or comparable body empowered to correct an injustice. *See Skinner v. United States*, 219 Ct.Cl. ——, ——, 594 F.2d 824, 830–31 (1979).

219 Ct.Cl. ——, ——, 594 F.2d 824, 828 (1979); *Riley v. United States*, 221 Ct.Cl. ——, ——, 608 F.2d 441, 443, 444 (1979); *Guy v. United States*, 221 Ct.Cl. ——, —— 608 F.2d 867, 872–74, 875 (1979).[4] To recover back pay, it is not enough for the plaintiff to show merely that an error or injustice was committed in the administrative process; he must go further and either make a showing that the defect substantially affected the decision to separate him or relieve him from active duty, or at least he must set forth enough material to impel the court to direct a further inquiry into the nexus between the error or injustice and the adverse action. We consider each of these issues *seriatim* as they relate to this case.

I. *Error or injustice in challenged OERs*

A. Before the court plaintiff challenges eight OERs on four different grounds.[5]

1. Five OERs for the period from July 1960 through October 1962 (1960–1962 OERs) are claimed to be inaccurate because the ratings were designed to show progressive improvement without regard to actual performance. A statement from the rater tends to support this assertion.

2. The OER for the period from March 1963 through September 1963 (September 1963 OER) is termed defective for several reasons—lack of observation of plaintiff by the rater, an expression by the rater of dislike for the plaintiff, failure by the rater to mention significant accomplishments by plaintiff during the rating period, evidence that the ratings were influenced by crew position rather than actual performance. This attack is buttressed by a number of statements by officers who served with plaintiff during this period.

3. The OER for the period from January through August 1970 (August 1970 OER) is

called inaccurate because the rater failed to mention some of plaintiff's significant accomplishments during the rating period. This is supported by a statement by the rater which admits that he was unaware of these accomplishments and would have rated plaintiff higher if he had been aware of them. Plaintiff also relies on the decision of the Officer Personnel Record Review Board allowing his request that a letter of mitigation be attached to this OER.

4. The OER for the period from October 1962 through March 1963 (March 1963 OER) is challenged as not reflecting the actual assessment submitted by the rater for that period. A statement by the rater, Major George A. Lasley, explains that it was common practice to sign OER forms in blank and submit evaluations in rough draft form which were later put in final form by a clerk. Lasley states:

> At the onset I would like to state that the comments under Section VII are statements that were intended to be submitted on the final form. The placement of X's under Section III blocks 1 through 8 and Sections IV, V, and VI *are not placed in the blocks that I intended they be placed.* (emphasis added)

There is no contrary evidence.

B. Regulations prescribe that OERs are to be objective and prepared in a certain way. *Sanders, supra*, 219 Ct.Cl. at ——, 594 F.2d at 814. *See also Skinner v. United States*, 219 Ct.Cl. ——, 594 F.2d 824 (1979). We have held that an officer's challenge to an OER "must overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." "This presumption, of course, includes those officers who are charged with rating the performance of

---

4. There are also a number of orders by the court which state or reflect these twin requirements for this category of suit. *See, e. g., Wilson v. United States*, Ct.Cl. No. 272–74 (August 31, 1979); *Duggan v. United States*, Ct.Cl. No. 153–76 (August 31, 1979); *Reid v. United States*, Ct.Cl. No. 446–74 (Sept. 28, 1979); *Borgford v. United States*, Ct.Cl. No. 125–75

(Oct. 26, 1979); *Albrecht v. United States*, Ct.Cl. No. 174–76 (Nov. 2, 1979).

5. This count of eight challenged OERs omits the one OER (April 1964 OER, covering September 1963–April 1964) voided by the Correction Board because it was not signed by the rating officer.

other officers." (citations omitted). *Guy, supra*, 221 Ct.Cl. at ——, 608 F.2d at 870. *See also Sanders, supra; Boyd v. United States*, 207 Ct.Cl. 1 (1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976). Perfect objectivity in the rating process cannot be expected or even hoped for. *Guy, supra*, 221 Ct.Cl. at ——, 608 F.2d at 870–71.

■ In the face of this presumption, plaintiffs must do more, to invoke court intervention, than merely allege or prove that an OER seems inaccurate, incomplete, or subjective in some sense. The showing is not enough where an allegation, even if proved, fails to establish the presence of "factors adversely affecting the ratings which had no business being in the rating process," *id.*, or where there is no clear violation of a specific objective requirement of statute or regulation, or where there is no misstatement of a significant hard fact. Nor is it enough to impel us to act that the rater may now say that he scored the claimant too low. In *Tanaka v. United States*, 210 Ct.Cl. 712 (1976), *cert. denied*, 430 U.S. 955, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977), we held that a rater's statement that his opinion had changed and that he would now rate plaintiff higher, absent any misstatements of fact in the OER, did not tender a triable issue on the accuracy of an OER. In *Savio v. United States*, 213 Ct.Cl. 737 (1977), the plaintiff supported a challenge to the accuracy of an OER with a statement by the rater that the rating was not consistent with the rater's high regard for the plaintiff, blaming this on his slight personal attention to the plaintiff's performance of

duties, words of caution he had received from his superiors on inflating numerical ratings in OERs, and his failure to include pertinent information in the report. Again, there were no allegations of misstatements of hard fact in the original rating, and we refused to order the removal of the challenged OER. *See also Borgford v. United States, supra.* In *Stewart v. United States*, 222 Ct.Cl. ——, 611 F.2d 1356 (1979), we held that plaintiff's allegation that OERs were inaccurate because his raters intentionally downgraded his ratings in order that he would show job progression was an insufficient ground for our voiding the OERs. *Id.*, at ——, 611 F.2d at 1358. *See also Reid v. United States, supra; Wilson v. United States, supra.*

■ C. Based on these holdings and criteria, the majority of the challenges to plaintiff's OERs must be rejected.[6] The ground for challenging the 1960–62 OERs is that which was found insufficient in *Stewart, supra*, and thus cannot be sustained here. The challenges to the September 1963 OER and the August 1970 OER are very similar to those considered in *Tanaka, supra, Savio, supra*, and *Borgford, supra.* The contentions are that the opinions expressed by the raters were not completely accurate or complete, not that the OERs were factually wrong or were influenced by "factors adversely affecting the ratings which had no business being in the rating process." *Guy, supra*, 221 Ct.Cl. ——, 608 F.2d 870–71.[7] Accordingly, we find no error in the Correction Board's refusal to remove these OERs.

**6.** The Correction Board's decision, while lengthy in comparison with some Board efforts, is mostly conclusory. The opinion is more a catalogue of the contentions considered by the Board than an explanation of how the material and arguments presented were weighed and appraised. In these circumstances we give less deference to the Board's conclusions than we would do if a reasoned explication had been forthcoming.

**7.** With respect to the September 1963 OER there is an assertion that the rater expressed dislike for the plaintiff on a single occasion at a

bar. We view this allegation of a single and casual expression of dislike as comparable to the charge in *Borgford* that those rating officers were members of a nurses' clique of which that claimant was not a member, and not as serious or significant as the allegations of the rater's and endorser's personal animosity and bias in *Stewart*, said to be due to Stewart's having a Japanese wife (in that case there were "several statements by knowledgeable persons citing specific incidents," and the issue was remanded, among others, for a hearing by the Correction Board).

We find, however, that the Board's failure to remove the March 1963 OER was erroneous. Major Lasley's undisputed statement establishes that the ratings he submitted for that OER were not the ratings found in the OER considered by the selection boards. His explanation about the practice of signing OERs in blank is corroborated by two fellow officers. The inference that the ratings were either intentionally or unintentionally downgraded is inescapable.[8] But it is very plain that the OER must represent the rater's own evaluation, not that of someone else. The Correction Board gave no explanation for its failure to remove this OER. Defendant argues that the concurrence of the indorsing officials established the accuracy of the ratings, but the Board rejected this very rationale when it removed the April 1964 OER after finding that it had not been signed by the rater. We can see no rational basis for the Board's failure to remove the March 1963 OER as well.

## II. *Impact of defective OERs*

The next question is whether the selection board's passovers-for-promotion were or may have been so much influenced by the two defective OERs we have found in Part I, *supra*,[9] as to warrant our directing a voiding of the passovers (or to order a further inquiry into the impact of the erroneous OERs). The fundamental principle permeating our consideration of this issue of impact or nexus is whether the claimant's record before the selection boards (including the two defective OERs) still portrayed his service career on a "fair and equitable basis", as the statutes require. 10

U.S.C. §§ 3442(c), 8442(c) (1976); *Sanders, supra*, 219 Ct.Cl. at ——, 594 F.2d at 814. If a claimant's record before the selection boards falls below that standard, then any resulting passovers are void and his discharge is unlawful. *Riley, supra*, 221 Ct.Cl. at ——, 608 F.2d at 443 (1979). But merely because the Correction Board voids an OER, it is not automatically obligated to void any passover emanating from a selection board that had a defective OER before it. The officer must show that the presence of the defective OER made his whole record before the selection board something less than "substantially complete and fair." *Sanders, supra*, 219 Ct.Cl. at ——, 594 F.2d at 814. Harmless error, unrelated to an officer's nonselections, will not warrant judicial relief. *Riley, supra*, 221 Ct.Cl. at ——, 608 F.2d at 443.

In making such an appraisal in this case we cannot rely on the Correction Board's determination that the presence of a defective OER in plaintiff's record did not vitiate the actions of the selection boards considering him. First, the Correction Board apparently used the "but for" test—the very test we explicitly rejected in *Sanders*.[10] Second, because the Board failed to remove the March 1963 OER (which we have held in Part I, *supra*, to be legally erroneous), the Board's conclusion of lack of nexus did not take into account the effect of that void OER. In these circumstances we must either canvass for ourselves the evidence in the administrative record in the light of the arguments and analyses offered by the parties,[11] or we can remand to the military department for clarification or further in-

---

8. Major Lasley's statement speculates that the OER might have been lowered as part of an effort to limit the number of high ratings issued. The key to our conclusion that the evidence establishes a legal error is that the rater's evaluation was lowered by some method not contemplated by the regulations. We make no intimation as to how the change may have come about.

9. This includes the one OER found defective by the Correction Board itself and the one which we find should also have been voided.

10. From the face of the Board's opinion it is somewhat difficult to discover what legal standard it applied, but the Government takes the position that the Board applied the "but for" test (see Defendant's Reply Brief at 7), and we accept this characterization as probably accurate.

11. This is the general course pursued in some of our cases. *See, e. g., Guy, supra*, 221 Ct.Cl. ——, 608 F.2d 867 (1979): *Duggan, supra*, Ct.Cl. No. 153–76 (August 31, 1979); *Reid, supra*, Ct.Cl. No. 446–74 (September 28, 1979).

quiry.[12]  Here we adopt the former approach because both parties have sought summary judgment and the extensive administrative record is sufficiently developed to allow us to make a reasoned judgment on the issue of connection or nexus.[13]

■ We are not, however, a super selection board in passing on this problem of the connection between the defective OERs and the likelihood of plaintiff's selection for promotion.  See Sanders, supra, 219 Ct.Cl. at ——, 594 F.2d at 816.  Our inquiry focuses on two subordinate and limited questions—issues which are separate but interrelated: First, does the presence of the defective OERs in plaintiff's record make that record appear worse than it would absent those OERs, so that in that sense he was prejudiced by the OERs?  Second, was plaintiff's comparative position before the selection boards such that, even assuming that there was some prejudice associated with the defective OERs, it was unlikely that he would have been promoted in any event?

■ In seeking an answer to the first of these questions, the court has looked to a comparison of the officer's average rating score with and without the defective OERs.  Riley, supra, 221 Ct.Cl. at ——, 608 F.2d at 443;  Guy, supra, 221 Ct.Cl. at ——, 608 F.2d at 872;  Duggan, supra, at 4;  Reid, supra, at 5.  When first considered by a selection board for promotion to the temporary rank of major in July 1968, Captain Hary had an average score of 5.6–2.1.  If we disregard the ratings in the voided OERs (the April 1964 and March 1963 OERs), the average rises slightly, to 5.6–2.2.  If we make this comparison in relation to each of the selection boards that considered plaintiff for promotion to major, we find no significant variations.[14]  It is fair to conclude that any prejudice to plaintiff's chances for promotion resulting from the presence in the record of the two defective OERs was relatively slight.[15]

We next consider plaintiff's comparative position before the various selection boards in relation to the damage to his position putatively attributable to the defective OERs.  The statistics relied upon by plaintiff—selection rates[16]—offer no real evidence concerning this specific plaintiff's comparative chances for promotion.  The

---

12.  We have taken this general road in other instances.  See, e. g., Stewart, supra; Bogis v. United States, Ct.Cl. No. 152–76 (July 20, 1979); Albrecht, supra, Ct.Cl. No. 174–76 (Nov. 2, 1979).

13.  The age of the case and the extent of prior administrative litigation are also pertinent factors.

14.  Neither party provided the court with this type of evaluation..  Our figures show that in no case would the exclusion of the defective OERs raise either plaintiff's overall evaluation average or promotion potential average more than .1 point.

15.  We realize that this numerical-averaging approach does not provide a perfect measure of the prejudice which can flow from the presence of defective OERs.  It does however, give the court a useful approximation of the general effect of an OER on plaintiff's overall record. The court has considered other, more qualitative, factors. See Riley, supra, 221 Ct.Cl. at ——, 608 F.2d at 443 (the defective OERs "disturbed the picture of steady advancement and increased competence and efficiency which his record otherwise demonstrated."); Guy, supra, 221 Ct.Cl. at ——, 608 F.2d at 872 (the missing OER "covered a period of active combat duty

in Southeast Asia", "was the first OER received covering plaintiff's performance after he had been promoted to the temporary rank of major", "was one of four OERs covering his performance as a major before the 1972 selection board").  In our view the present case is not one in which a remark within an OER, rather than the ratings in general, can be considered particularly prejudicial.  Nor is this a case in which we consider qualitative factors to outweigh the measure of prejudice supplied by the statistics.

16.  Plaintiff offers Air Force statistics detailing the rates of selection by the selection boards whose actions he challenges.  The percentages show that when plaintiff was initially considered for promotion to temporary major, the rate of selection of new eligibles like him was 78%.  They also show that the rates of selection for promotion to permanent major by the selection boards that considered plaintiff in 1971 and 1972 were 93%, and for pilots like plaintiff were 95% and 96% respectively.  The statistics likewise reveal that those officers who had been passed over had a markedly reduced chance for selection for either temporary or permanent promotion.

only acceptable judgment we can draw from these selection figures is that, when he was first considered for promotion, plaintiff had a generally good chance for selection (78%) but that his chances decreased significantly after he was passed over. This is not surprising. The inherently detrimental nature of the presence of passovers in a serviceman's record is already known to this court. *See Sanders, supra*, 219 Ct.Cl. at ——, 594 F.2d at 819; *Riley, supra*, 221 Ct.Cl. at ——, 608 F.2d at 444.

More significant for our present purpose are the number of points plaintiff was below the cutoff point, the number of officers with the same score, and the number of officers between plaintiff and the cutoff point.[17] The following tables show his comparative position—in these terms—before the selection boards which considered him for promotion to major:

### Temporary Major Boards

|  | 7/68 | 4/69 | 12/70 | 11/71 |
|---|---|---|---|---|
| Points below cutoff | 7.5 | 5.5 | 3 | 1.5 |
| Number with same as plaintiff | 13 | 18 | 16 | 36 |
| Number between plaintiff and cutoff | 479 | 324 | 191 | 57 |

### Permanent Major Boards

|  | 8/71 | 8/72 |
|---|---|---|
| Points below cutoff | 3 | 1 |
| Number with same as plaintiff | 35 | 13 |
| Number between plaintiff and cutoff | 3 | 8 |

When plaintiff was first considered for promotion to temporary major in July 1968, a point at which the defective OERs made up almost 20% of his record, he was at best the 480th person from the cutoff point for promotion. When considered for promotion for temporary major by later selection boards he was no better than 58th from the cutoff point. Considering his relatively poor comparative position and the slight amount of prejudice shown for his overall record, we conclude that, even absent the defective OERs, plaintiff was unlikely to be promoted by those selection boards that considered him for selection to temporary major. It follows that those passovers should not be voided.

Plaintiff's comparative position before the selection boards which considered him for promotion to permanent major is considerably better. In 1971 he was the fourth person from the cutoff, and in 1972 he was the eighth person from the cutoff, and was separated by only one point. But because we have held that the passovers for the temporary rank of major are valid, we must consider (with respect to the passovers for permanent major) the significance of the presence of those temporary-major-passovers in plaintiff's record in relation to the significance and impact of the defective OERs. As noted above, the presence of passovers in a record is a grave handicap to an officer's promotion opportunities. As we have also said, the prejudice from the presence of the defective OERs was slight in this instance, and could be expected to lessen over time as more recent OERs were added to plaintiff's record. On balance, we conclude that it is quite likely that the plaintiff would have failed to be promoted to permanent major in 1971 and 1972 even if the defective April 1964 and March 1963 OERs had not been in his record. Any error in the selection process was therefore harmless. *See Guy, supra*, 221 Ct.Cl. at ——, 608 F.2d at 874; *Duggan, supra*, at 4–5; *Reid, supra*, at 6.

It is unnecessary to discuss certain other arguments raised by plaintiff. They are irrelevant[18] or controlled by prior decision.[19]

---

**17.** *See Sanders, supra*, 219 Ct.Cl. at ——, 594 F.2d at 819–20; *Guy, supra*, 221 Ct.Cl. at ——, 608 F.2d at 873–74.

**18.** Plaintiff makes an extensive argument concerning certain proceedings carried out under AFR 36–2 after he had professed a fear of flying. Plaintiff offers no good evidence, however, that these proceedings were ever brought to the attention of a selection board. A finding of probable error or injustice cannot be based on mere speculation.

**19.** On the issues of alleged *ex parte* contacts and the right to a hearing before the Correction Board see *Borgford, supra*, at 3–4. Moreover, plaintiff has had full opportunity to present his case to this court (which in this instance gives slight or no deference to the Board's determinations).

The Government's motion for summary judgment is granted, plaintiff's motion is denied, and the petition is dismissed.