Joseph A. FESCINA, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 671–84C.

United States Claims Court.

April 22, 1987.

Jack E. Carter, Fayetteville, N.C., for plaintiff.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

MOODY R. TIDWELL, III, Judge:

This case comes before the court on cross-motions for summary judgment. Plaintiff contends his separation from the Army of the United States resulted from an improperly prepared officer evaluation report (OER) that gave plaintiff a low rating. Plaintiff further asserts that the Army Board for Correction of Military Records (ABCMR) acted arbitrarily, capriciously, in bad faith and contrary to regulations by failing to remove the adverse OER from his records. This court determines that the OER was properly prepared, and the ABCMR correctly concluded that the report should remain a part of plaintiff's record.

## FACTS

Plaintiff enlisted in the Army on March 12, 1973, and was appointed to the rank of Warrant Officer 1 on June 20, 1974. He was promoted to Chief Warrant Officer 2 on June 20, 1977. While assigned to B Troop, 4th Squadron, 7th Cavalry, 2nd Infantry Division, in the Republic of Korea, plaintiff received an adverse officer evaluation report (OER) for the period of November 7, 1978, to March 30, 1979.[1] The report was signed by plaintiff's platoon leader, Captain John E. Pack, acting as plaintiff's rater and Troop Commander, Major Ronald J. Frank, who indorsed the report. On April 2, 1979, the OER was referred to plaintiff for his acknowledgment. Plaintiff was advised at that time that he could return a statement on his own behalf to be appended to the report, but he chose not to do so.

The OER awarded plaintiff a numerical score of 72 points out of a possible score of 200. The report contained generally negative comments regarding plaintiff's judgment, capabilities, and performance, such as: "Individual noted for public condemnation of U.S. Army and his country in the presence of subordinates and civilians. Required ten months in Korea to be awarded Pilot in Command orders.... Penetrated restricted areas endangering his aircraft and crew, thus requiring revocation of his Pilot in Command orders." In addition, the report contained unfavorable comments concerning plaintiff's potential for promotion. Captain Pack stated in part: "In my most sincere opinion, I do not believe this officer is capable of adjusting to the requirements of military life. He has exercised poor judgment during his performance and, in so doing, endangered the lives of others." Major Frank, the indorser, stated: "Concur with Rater.... He has, I believe, little desire to conduct himself as an officer. He is argumentative, temperamental and immature."

Plaintiff was passed over for promotion to the grade of Chief Warrant Officer 3 (CW3) by the Army promotion selection boards that convened in 1980. On January 1, 1981, plaintiff appealed the adverse OER to the Deputy Chief of Staff for Personnel Special Review Board (SRB) pursuant to Army Regulation 623-105. The basis of plaintiff's appeal to the SRB was substantive inaccuracy. Plaintiff claimed that the rating officials were not objective in their

---

1. The OER is an appraisal of an officer's performance of duty in various assignments. The reports serve as the primary source of information for a variety of personnel actions. Army Regulation 623-105, ¶ 1-2.

evaluation[2] and noted that the contested report was inconsistent with reports received for prior and subsequent rating periods. Plaintiff supported his contentions with third-party statements from peers and his then current supervisor. The SRB investigated the allegations by telephoning both the rater and indorser.

The SRB found that plaintiff "fail[ed] to provide compelling evidence to support his contention that rating officials had preconceived notions" about his involvement in alleged black marketing violations, and despite the fact that the contested OER was inconsistent with prior reports, there was "considerable justification for the statements made in [the] subject OER." The SRB denied plaintiff's appeal on March 19, 1981, but did declare part of his originally rated period as nonrated.[3] On April 7, 1981, plaintiff was notified that his administrative appeal had been denied.

Plaintiff was notified in May, 1981, that he had again been passed over for promotion to the grade CW3 by the 1981 promotion board. Plaintiff was also informed that pursuant to Army Regulation 635–100, he would be released from active duty on the 90th day after receipt of notification of his second passover. On August 30, 1981, the Army released plaintiff from active duty. Plaintiff received an Honorable Discharge and $15,000 in readjustment pay.

On November 1, 1983, pursuant to the provisions of Army Regulation 15–185, plaintiff applied to the Army Board for Correction of Military Records (ABCMR) to have the adverse OER removed from his records. In his petition, plaintiff alleged that his disputed OER was substantively inaccurate, that his rating chain was biased, that he was rated poorly due to conduct of which a court-martial later exoner-

ated him, and that his OER violated Army Regulation 623–105 because it covered a rating period of less than 90 days and mentioned performance from a prior rating period.

The ABCMR denied plaintiff's application on June 6, 1984. The ABCMR concluded that plaintiff had failed to present sufficient relevant evidence to demonstrate the existence of probable material error or injustice, and that the report appeared to be a fair and objective evaluation of plaintiff's performance during the rating period. Plaintiff's petition to this court was filed December 17, 1984. In it, plaintiff asks this court to hold that the ABCMR acted arbitrarily, capriciously, and contrary to regulation when it failed to void the OER in question. Furthermore, plaintiff asks that he be restored to active military duty at the CW3 grade level, for back pay and allowances at the CW3 pay level retroactive to the date of his first non-selection for promotion to that grade and removal of the OER in question from his official military personnel file.

## DISCUSSION

 Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). In evaluating a motion for summary judgment, any doubt over whether there is a genuine issue of material fact must be resolved in favor of the non-moving party. *Housing Corp. of America v. United States,* 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972); *Campbell v. United States,* 2 Cl.Ct. 247, 249 (1983). In addition, the "inferences to be drawn from the ... facts ... must be viewed in the light most favorable to the party opposing the motion" for summary judgment. *Adickes*

---

**2.** Plaintiff claimed that both officers had preconceived notions about his guilt in a criminal investigation and subsequent court-martial proceeding on charges of contrabanding/black marketing, which allegedly occurred during the evaluation period. The initial report of the incident was made to the Army Criminal Investigation Command by the indorser, Major Frank on December 15, 1978. Plaintiff was subsequently suspended from favorable personnel actions on December 28, 1978, and restricted from flight

status effective January 2, 1979. In September of 1979, he was acquitted by the court-martial and restored to flight status.

**3.** The SRB declared part of the period nonrated because, from February 15, 1979, to the end of the rating period, plaintiff was given no duties and assigned to the Bachelor Officer's Quarters (BOQ) during duty hours.

v. S.H. Kress & Co., 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); Ball v. United States, 1 Cl.Ct. 180, 183 (1982). The court is of the opinion that there are no genuine issues of material fact in dispute and that the case is properly before the court for disposition on cross-motions for summary judgment.

Plaintiff asserts that his separation from the Army was a direct result of the presence of a faulty OER in his official military personnel file; thus, his separation was improper and illegal. See Sanders v. United States, 219 Ct.Cl. 285, 302–03, 594 F.2d 804, 814 (1979). Plaintiff also asserts that the ABCMR erred in denying him monetary relief in the form of back pay for the allegedly illegal separation. The court in Sanders held that such a claim for back pay by an officer of the military places the propriety of his separation within the jurisdiction of this court. See Sanders, 219 Ct.Cl. at 299–301, 594 F.2d at 812–13.

 Our review of the action taken by the ABCMR is, however, limited. The court in Sanders, stated:

Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due.

Id. at 298, 594 F.2d at 811 (citations omitted). In addition to the onerous standard faced by plaintiff in attempting to overturn the ABCMR's decision, he must overcome the presumption that administrators of the military and other public officers discharge their duties correctly, lawfully and in good faith. Id. at 302, 594 F.2d at 813. Furthermore, the court takes note of the

strong policies which encourage providing the widest possible latitude to the armed services in their dealings with military personnel. Id.

A. Laches

 Defendant argues that plaintiff's claim should be barred by the doctrine of laches. The court disagrees. To be barred by the doctrine of laches from bringing a claim before this court, a party must have inexcusably delayed in asserting his claim and the party asserting the defense of laches must have been prejudiced by the delay. Braddock v. United States, 9 Cl.Ct. 463, 470 (1986). In the instant case, plaintiff has not inexcusably delayed in asserting his claim. While approximately five and a half years have passed between plaintiff's notification of the adverse OER and his petition in this court, plaintiff has consistently and properly pursued an administrative remedy for his claim throughout that period. Plaintiff sought initial review from the SRB before he was notified of his second passover for promotion by the selection board that convened in 1981.[4] Approximately two and one-half years passed between the denial of that claim and plaintiff's appeal to the ABCMR, and only six months passed between plaintiff's receipt of notification that his petition had been denied in that proceeding and the filing of his petition for review in this court. The court holds that plaintiff has not delayed unreasonably in asserting his claim. See, e.g., Riley v. United States, 221 Ct.Cl. 308, 314–15, 608 F.2d 441, 444 (1979) (holding that plaintiff who waited four years to challenge one OER and five years to challenge another before the SRB was not barred by the doctrine of laches); Braddock, 9 Cl.Ct. at 471 (1986) (holding that an individual who pursued administrative remedies was not barred by laches even where his petition in the United States Court of Claims was filed four years after his discharge from service). Thus plaintiff's claim is not barred by the doctrine of lach-

---

**4.** Plaintiff was notified in May of 1981 of his second non-selection for promotion, but appeal- ed to the SRB for relief January 1, 1981.

es, and we turn to the merits of plaintiff's argument.

### B. *Claims of Substantive Inaccuracy*

 Plaintiff claims that the challenged report is substantively inaccurate. Plaintiff claimed before the ABCMR that the rater's notation of a buffer zone violation on his OER was incorrect.[5] Plaintiff had the burden of presenting sufficient relevant evidence to the ABCMR to show probable material error. The ABCMR held that plaintiff had not met this burden, and the Court must determine whether this decision was arbitrary, capricious, or not supported by substantial evidence. *See Sanders*, 219 Ct.Cl. at 298, 594 F.2d at 811.

 Plaintiff offered to the Board a statement by CW2 Calvin W. Irvin, troop safety officer of B Troop 4th Squadron 7th Cavalry. CW2 Irvin wrote that no report was made concerning such a buffer zone violation. The ABCMR obtained an advisory opinion from the SRB. In it, the SRB paraphrased conversations with both the rater and indorser about the incident. Both recalled the incident. Major Frank further indicated that "the world would not have known about such a violation." In the earlier proceeding before the SRB, Captain Pack indicated that no report was made as the incident was handled "in-house." The ABCMR considered the statement of CW2 Irvin insufficient to show probable material error in the OER.

In light of the statements of both the rater and indorser, we cannot find that the Board acted arbitrarily or capriciously in reaching their decision. "[Plaintiff] must do more, to invoke court intervention, than merely allege or prove that an OER seems inaccurate...." *Hary v. United States*, 223 Ct.Cl. 10, 17, 618 F.2d 704, 708 (1980). While the letter from CW2 Irvin is relevant to a showing that no report was made to him concerning the buffer zone incident, it does not rise to a level sufficient to show that the incident did not occur. The statements made by both the rater and indorser

to the SRB not only make it clear the incident took place, but also explain that in general a report would not always be made in such a situation, and that in this case it may have been that no report was made.

Plaintiff urges that surely if such an incident occurred, there would be some record of it with the various agencies monitoring the zones in question. Plaintiff contends that Defendant should therefor be required to produce such evidence, or that the ABCMR acted capriciously in not seeking such evidence of its own accord. The court disagrees. Plaintiff's conclusion is erroneous because his premise is inaccurate. The evidence tends to show that, in fact, no such report existed. The ABCMR, thus, properly avoided a search for something that did not exist. *See Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813.

 Part IV(b) of the challenged OER states that plaintiff was noted for public condemnation of the U.S. Army and his country in the presence of subordinates and civilians. Plaintiff contended before the ABCMR that any comments he may have made were constructive and proper, and therefore the rater's statement in Part IV(b) is in error. The ABCMR found this claim meritless, and the court agrees. The OER stated that plaintiff was noted for public condemnation of the United States Army and his country in the presence of subordinates and civilians. Captain Pack, in a telephone conversation with the SRB, supported this assertion by recalling that when plaintiff was forced to do extra push-ups one day, plaintiff became vulgar and said things which Captain Pack construed to be public condemnation of the Army and the United States. Plaintiff offered no evidence to show that such comments were not made. Rather, plaintiff simply asserted that any comments he made were constructive, proper criticisms. In light of the strong presumption that the rater discharged his duties lawfully and in good faith, *Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813, this characterization by the plaintiff

---

5. The rater noted in the OER that plaintiff flew his helicopter into an area of restricted airspace known as the buffer zone without authorization.

is not sufficient to show that comments, which could objectively be characterized by the rater as a condemnation of the United States or the Army, were not made by the plaintiff.

### C. *Claims that the OER Was Prepared Contrary to Regulations*

 Plaintiff contended before the ABCMR that the OER at issue was not prepared in accordance with military regulation for the following reasons: the rated period was less than 90 days; the OER contained a statement relating to plaintiff's actions outside the rating period; and the report was not rendered objectively. The ABCMR denied all of these claims. We hold the ABCMR properly found the OER was prepared in accordance with Army Regulations.

Plaintiff asserted that he had actually been relieved of duty on January 2, 1979 and, therefore, that he had only been rated from November 1, 1978, to January 2, 1979, or fifty-eight days.[6] Plaintiff contended that for an OER to be valid, a rating period of ninety days was required. However, the ABCMR correctly noted that the actual requirement at the time of the subject OER was sixty days because the ninety-day requirement cited by plaintiff did not become effective until September 15, 1979, well after the adverse OER was submitted. *See* AR 623–105 ¶ 2–2c (June 11, 1978). In addition, the ABCMR found that there was no evidence that plaintiff had been relieved of duty on January 2, 1979. The court concurs. In fact, the court notes that plaintiff's letter to the ABCMR, dated August 8, 1983, asserted he was relieved of duty in the middle of January, for a total number of duty days well above the sixty-day requirement.

 In the OER, the rater gave plaintiff a low mark for technical proficiency. To illustrate this assertion, the rater noted that though plaintiff achieved his Pilot in Command (PIC) status during the rating period, it had taken him a total of ten

months to do so. The rater indicated later that ninety days is normally sufficient. Plaintiff asserted that this comment was improper on the basis of AR 623–105 ¶ 1–2(b)(3) stating: "remarks pertaining to manner of performance or incidents occurring outside the period of the report are not to be included." *Id.* "In construing administrative regulations, 'the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) (quoting *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). The ABCMR found that "since [plaintiff's] failure to obtain PIC status was a continuing deficiency, and was used to illustrate lack of technical proficiency, it was appropriate for [plaintiff's] rater to comment on this notwithstanding the fact that the bulk of the delay was in a prior rating period." There seems to be no dispute that the length of time necessary to obtain PIC status may illustrate technical proficiency. There is no other logical way to denote this on an OER than as it was denoted on the subject OER. Plaintiff contends that the rater might properly have noted that plaintiff received his PIC orders after thirty-one days since this was the number of days after the start of the rating period that the orders were received. However, that would be totally misleading relative to technical proficiency where, in fact, plaintiff required ten months to achieve PIC status. In sum, according to the ABCMR's interpretation of army regulations, the rater's remark was not one pertaining to manner of performance outside the period of the report, but rather a remark used to illustrate manner of performance during the period of the report. The court finds this interpretation wholly consistent with the regulation, the law and common sense.

---

**6.** When such a change of duty takes place, a new rating period is begun and the previous period is terminated.

█ Plaintiff also argues that the ABCMR acted contrary to regulation by considering the advisory opinion prepared by the SRB that reviewed plaintiff's ABCMR application. The court disagrees. Defendant properly notes in response to this contention that under the provision of Paragraph 27(b), AR 15–185, the ABCMR is authorized to call upon the Secretary of the Army and the general and special staffs of the Department of the Army for "investigative and advisory services." *Id.* The case summary and addendum referred to by plaintiff, which is addressed to the ABCMR and dated April 19, 1984, by Colonel William A. McSpadden states: "Per your request and under the auspices of the ODCSPER [Office of the Deputy Chief of Staff for Personnel], the DCSPER [Deputy Chief of Staff for Personnel] Special Review Board (SRB) has reviewed the ABCMR application of CW2 Joseph A. Fescina...." This language clearly implies that the summary referred to by plaintiff is exactly the type of investigative or advisory report which the ABCMR may properly seek and consider under Paragraph 27(b), AR 15–185. Its subsequent use by the ABCMR, therefore, may not be challenged. *See Flute v. United States*, 210 Ct.Cl. 34, 41, 535 F.2d 624, 628 (1976).

█ Finally, plaintiff contends that his rating chain was biased and could not render a fair and objective evaluation of him as required by AR 623–105 ¶ 4–1. The ABCMR considered all the evidence presented relevant to this point, which consisted primarily of letters in support of plaintiff written by his wife, his attorney during his court-martial, and his contemporaries and found none was of probative value to corroborate the charges. The court finds that the letters offer character support and allegations of bias similar to those offered by plaintiff himself, but none offer any evidence of probative value tending to show the rating chain was biased. As stated in *Hary:* "A finding of probable error or injustice cannot be based on mere speculation." *Hary v. United States*, 223 Ct.Cl. at 24 n. 18, 618 F.2d at 711 n. 18.

█ Neither may plaintiff attack the adverse OER's objectivity by comparison with subsequent and prior OERS. The rater and indorser were responsible for evaluating plaintiff's performance during the period of the contested OER. They were in a position to observe and monitor his performance on a daily basis. Furthermore, they had a legal obligation in this duty, as no other officer had for this period, to ensure "the complete and accurate use of the report and the regulations governing its preparation." AR 623–105 ¶ 4–1; *see Grieg v. United States*, 226 Ct.Cl. 258, 268–69, 640 F.2d 1261, 1267 (1981), *cert. den.*, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982). Indeed, the overwhelming impression is that no bias existed where the rater and indorser agreed on a number of independently verifiable incidents such as the buffer zone violation, inflammatory comments, and PIC status. It appears there was more than sufficient justification for the report and that it was a fair and objective evaluation of plaintiff's performance during the rated period.

As stated in *Grieg:*

The cold reality of the situation is that it will always be difficult to overcome the discretionary judgments and evaluations by the rater and indorser.... However, this is as it should be. This court is not here to second-guess them. Further, "we will not substitute our judgment for the board's when reasonable minds could reach differing conclusions."

*Grieg*, 226 Ct.Cl. at 270, 640 F.2d at 1268 (quoting *Sanders v. United States*, 219 Ct.Cl. at 302, 594 F.2d at 814).

Plaintiff has made other arguments in support of his position which the court considers to be without merit and which, in view of this court's holdings on the principal issues, have no impact upon the final outcome of the case. These issues, therefore, need not be addressed.

## CONCLUSION

The court concludes that plaintiff has failed to offer sufficient evidence to overcome the presumption that the ABCMR's decision was correct under the standards

set out in *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979). Therefore, plaintiff's contention that the ABCMR acted in an arbitrary or capricious manner, or contrary to law must fail. Accordingly, the court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Cross-Motion for Summary Judgment. The Clerk of the court is directed to dismiss the Complaint.