Steven **KOSNIK**, Plaintiff,

v.

F. Whitten **PETERS**, Acting Secretary of the Air Force, Defendant.

No. CIV. A. 98–1170(RMU).

United States District Court, District of Columbia.

Dec. 22, 1998.

---

Gary Rowland Myers, Gary Myers & Associates, Weare, NH, for Steven Kosnick, plaintiff.

Brian J. Sonfield, U.S. Attorney's Office, Washington, DC, for F. Whitten Peters, Acting Secretary of the Air Force, federal defendant.

*MEMORANDUM OPINION*

URBINA, District Judge.

**Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Cross Motion for Summary Judgment**

## I. Introduction

This matter comes before the court upon the defendant's motion to dismiss or, in the alternative, for summary judgment, and the plaintiff's cross motion for summary judgment. The plaintiff claims that reports filed concerning his military performance should have been endorsed by higher ranking officers. He also contends that the Air Force board that selected him for early retirement improperly denied his request that these reports be removed from his records. The plaintiff asks that the reports be removed from his file and that an Air Force board reconsider his selection for early retirement. The defendant argues that the plaintiff's claim concerning endorsement level is barred by the statute of limitations. Furthermore, the defendant contends that the board's decision not to remove these reports from plaintiff's personnel file was far from arbitrary and capricious.

After considering the submissions, the court concludes that the plaintiff's complaints regarding the rank of officers who reviewed his performance reports are barred by the statute of limitations. Furthermore, the court concludes that the military board's refusal to expunge the reports was not arbitrary and capricious.

## II. Background

The plaintiff, Steven Kosnik, filed this action on May 5, 1998, alleging procedural and substantive flaws relating to his forced early retirement as a colonel in the United States Air Force. He requests the court to expunge reports regarding his military performance and to order a new hearing on his involuntary retirement.

In the early 1990s, the military designed policies to manage an overabundance of personnel. One such policy was the use of Selective Early Retirement Boards ("SERB"), which reviewed the records of

officers and selected some for early retirement.

The SERBs made selections for early retirement in part by examining supplemental evaluation sheets, which were filled out by a senior rater of the officer under consideration. The senior rater made a recommendation on the supplemental evaluation sheet to retain the officer or select him for early retirement. The officer was provided a copy of the form and could submit a rebuttal to the management level if the senior rater recommended early retirement. Regardless of the recommendation, the officer could send a letter to the president of the SERB, calling attention to any other matters he felt the SERB should consider.

The plaintiff's senior rater, Lieutenant General Thomas R. Ferguson, Jr., recommended that the plaintiff be retained. Ferguson wrote that the plaintiff "is the business manager for the $100M+ annual activities of the 4950th Test Wing. He is a strong performer in this business. He will continue to serve well in policy positions for large, complex organizations. Retain him." (Def.'s Statement of Material Facts As To Which There Is No Material Issue ("Def.'s Facts") ¶ 3.) The head of the management level, Lieutenant General David J. Teal, concurred without further comment. Contrary to policy, the plaintiff was not provided with the evaluations prior to the assembly of the SERB in 1990. The plaintiff was subsequently selected for early retirement by the SERB after 27 years of service. If he had not been so selected the plaintiff could have served up to 30 years before being required to retire.

On April 30, 1991, the plaintiff applied to the Air Force Board for Correction of Military Records ("BCMR") to challenge his selection for early retirement. The BCMR is authorized to correct military records to remedy errors or injustices. In his submission to the BCMR, the plaintiff complained that he was not given an opportunity to review the evaluation filled out by Lieutenant General Ferguson and stated that, had he seen the form, he would have provided further input to the President of the SERB. The plaintiff stated that Ferguson's evaluation addressed only present job potential while failing to capture his 27 year career or address a problem the plaintiff characterizes as "non-programmatic personnel are at a distinct disadvantage in AFSC." (Def.'s Facts ¶ 4.)

The BCMR recommended that the plaintiff be reconsidered for retention by a SERB Special Selection Board ("SERB SSB") because the failure to provide the plaintiff with the supplemental evaluations was contrary to policy and may have contributed to his failure to submit a letter to the SERB president. However, the BCMR informed the plaintiff that it was not persuaded that a letter to the SERB president would have altered the decision. Thus, the BCMR did not recommend setting aside the plaintiff's selection for retirement. (Def.'s Facts ¶ 5.)

The plaintiff submitted to the SERB SSB the letter he claimed he would have submitted had he been aware of the evaluation completed by Lieutenant General Ferguson. However, after reviewing the plaintiff's submissions, the SERB SSB recommended the plaintiff for early retirement. (Def.'s Facts ¶ 6.)

In January 1993 the plaintiff filed a new application with the BCMR, alleging that his Officer Effectiveness Reports ("OERs") from 1985 and 1986 were improperly endorsed by one and two star generals instead of three or four star generals. The plaintiff stated that these "low level endorsements in the esoteric world of the U.S. Air Force promotion system in the mid-eighties communicated to the initiated that Plaintiff was not superior officer material." (Plaintiff's Facts ¶ 14.) The plaintiff claims that endorsements by three and four star generals were elevated over endorsements by one and two star generals and officers with low level endorsements were more likely to be selected by a SERB for early retirement. (Plaintiff's Facts ¶ 19.)

The plaintiff further alleged that high level endorsements were reserved for those favored by general officers and that the system was corrupt and discriminatory. The plaintiff, a "functional officer," states that program managers and their staff received higher level endorsements than functional of-

ficers. The plaintiff contended that this occurred through improper screening procedures which caused certain officers' OERs to be passed up the chain while holding back others.

The parties disagree as to when the plaintiff discovered the alleged errors in his 1985 and 1986 OERs. While the defendant asserts that the plaintiff became aware of the performance reports right after they were filed, the plaintiff states that he did not become aware of the problem until 1991, after he was selected for early retirement by the SERB. For purposes of this summary judgment disposition, the court accepts the plaintiff's contention as true.

In June 1993, the Chief of the Promotion Division at the Air Force Military Personnel Center submitted an advisory opinion to the BCMR recommending that the plaintiff's new application be denied either as untimely or on the merits. The opinion stated that the plaintiff provided no support from his rating chain to explain why his OERs were not forwarded for higher levels of endorsement, furnished no evidence that the reports would have been endorsed had they been forwarded, and that the lack of a particular level of endorsement does not constitute a flawed report. (Def.'s Facts ¶ 8 .)

The plaintiff responded to the advisory opinion by claiming that he had been led to believe that the OERs in question had previously been removed from his records. (Def.'s Facts ¶ 9.) The plaintiff supported this claim by citing a letter from December 1991 indicating that his records had been corrected as directed by his April 1991 application to the BCMR. (Def.'s Facts ¶ 9.) However, the plaintiff's April 1991 application did not claim that his performance reports were erroneous or ask that any of the performance reports be expunged. (Def.'s Facts ¶ 9.) The BCMR denied the plaintiff's application for the removal of the contested performance reports because the application was not filed in a timely manner. (Def.'s Facts ¶ 10.)

In May 1994, the plaintiff requested reconsideration of the BCMR decision. He submitted newspaper articles regarding alleged improper practices at some Air Force bases pertaining to the manner in which decisions were made on the promotion of officers. The BCMR denied this request, stating that the plaintiff failed to provide newly discovered evidence to justify reconsideration. (Def.'s Facts ¶ 11.)

In July 1994 the plaintiff submitted his request for reconsideration to the BCMR for the second time. This request was denied. The plaintiff's third request for reconsideration, in December 1994, included new statements from the plaintiff's rater, Lieutenant General Ferguson, an additional rater, Colonel Wilson, and an endorser covering one of the contested OERs. The BCMR then considered the decision on the merits in the wake of *Detweiler v. Pena*, 38 F.3d 591 (D.C.Cir.1994), which held that the BCMR statute of limitations period is tolled during periods of active service. The BCMR again rejected the plaintiff's application, stating that there was no persuasive evidence that the endorsement levels were erroneous or unjust and that no evidence was provided that indicated that a higher level endorsing authority would have signed either contested report had they been submitted. (Def.'s Facts ¶ 11.)

In October 1995, the plaintiff requested reconsideration for a fourth time. This time the plaintiff included new statements from Lieutenant General Ferguson and Colonel Wilson concerning the alleged endorsement impropriety. The BCMR again rejected the plaintiff's application, stating that there was insufficient evidence that the higher level endorsing authority would have agreed to endorse the contested reports.

The plaintiff remained persistent. His fifth application to the BCMR for reconsideration, in March 1996, included a third statement from Colonel Wilson concerning one of the contested reports. The BCMR rejected the plaintiff's application, writing that the lack of higher level endorsements did not lead to the plaintiff's selection for early retirement. The BCMR noted that the additional rater stated that:

> General officer endorsements were very limited in the mid–1980 time frame. The priority for higher level endorsements was invariable (sic) toward those officers com-

ing into the eligibility zone for promotion to colonel, not colonel selectees. In addition, senior officers coming into command like yourself were not viewed as one of the command's own.

(Def.'s Facts ¶ 16.) The BCMR stated that this did not show that the plaintiff was unfairly treated. Instead, the BCMR pointed out that the endorser did not recall practices or policies which suggested discrimination between functionals and program managers for OER endorsement levels. (Def.'s Facts ¶ 16.) Furthermore, the endorser noted that "outstanding individual performances ... generally was [sic] always recognized by the Command Section, irrespective of whether or not the individual was an old head or a newcomer, — a program manager or a functional." (Def.'s Facts ¶ 16.) Thus, the BCMR concluded that the additional rater, Colonel Wilson, could have forwarded the plaintiff's performance report for a higher level of endorsement but simply exercised his discretion in not doing so.

The plaintiff now comes to this court asking for relief. He maintains that the use of prescreening procedures in the OER endorsement process violated the law, and the use of low level endorsements in his OERs caused his selection for early retirement. The plaintiff requests that the OERs be expunged from his record and that the court order the convening of a SERB SSB to reconsider the plaintiff's claims.

### III.  Analysis

#### A.  Legal Standard

Federal Rule of Civil Procedure 56(c) provides that "summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) mandates summary judgment if a party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there is no genuine issue of material fact since there is a failure of proof concerning an essential element of the non-moving party's case that renders all other facts immaterial. *See id.* at 322–23, 106 S.Ct. 2548. The moving party meets its burden if it illustrates that there is an absence of evidence to support the non-moving party's case. *See id.* at 325, 106 S.Ct. 2548. The party opposing a motion for summary judgment may not rely on mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. The court must accept the evidence of the nonmovant as true, and all justifiable inferences are to be drawn in his favor. *See id.* Because there is no genuine issue as to any material fact in this case, summary judgment is appropriate.

#### B.  Legal Issues

##### 1.  Failure to Receive Higher Level Endorsements

The plaintiff claims that his OERs from 1985 and 1986 should have been endorsed by three or four star generals rather than the one or two star generals who actually endorsed the reports. This claim is barred by the statute of limitations.

Title 28 U.S.C. § 2401(a) provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." An action first accrues as soon as the plaintiff challenging the agency action can maintain a suit in court. *See Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 56 (D.C.Cir.1987). The defendant states that the plaintiff became aware of the alleged errors or injustices concerning his performance reports in May 1985 and June 1986. The plaintiff says he became aware of the alleged errors in 1991, when he was selected by the SERB. He did not file this action until 1998. Thus, even if the

plaintiff is accurate in stating that he was not aware of the alleged error until 1991, over six years passed from the time the action accrued to the time the plaintiff maintained this suit.

As the plaintiff admits, there is no requirement of administrative exhaustion for those seeking judicial review of certain agency actions under the APA. *See Darby v. Cisneros,* 509 U.S. 137, 154, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993). Plaintiff further agrees that the agency action for which he is seeking review in this case is one that does not require administrative exhaustion. Thus, the statute of limitations was not tolled while the plaintiff argued his case before the BCMR. *See Spannaus,* 824 F.2d at 59–61.

■ Section 2401(a) applies to claims seeking to correct or upgrade the discharge of former service members. *See Kendall v. Army Bd. for Correction of Military Records,* 996 F.2d 362, 365 (D.C.Cir.1993). In *Kendall* the plaintiff, an army private, was court martialed in 1974. *Id.* Kendall lost several appeals challenging his court martial in front of the Army Court of Military Review, the United States Court of Military Appeals, and the Army Board for Correction of Military Records. *See id.* Kendall finally brought suit in a United States District Court in 1989, thirteen years after his action accrued. *See id.* The court held that his claim was barred by section 2401(a). *See id.*

As in *Kendall,* the plaintiff here chose to file numerous appeals within the military administrative review system. These appeals were not mandatory and thus did not toll the statute of limitations. Therefore, the plaintiff's claim is foreclosed as he did not raise it before the statute of limitations expired. Accordingly, summary judgment is granted to the defendant on this issue.

## 2. The BCMR's Refusal to Remove the 1985 and 1986 OERs from Plaintiff's File

■ The plaintiff next claims that the BCMR's rejection of his request to remove the 1985 and 1986 OERs from his personnel file was arbitrary and capricious and an abuse of discretion. The court must measure the defendant's actions against the arbitrary and capricious standard found in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). Under this standard, the court will overturn an agency decision if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Id.* An agency action is arbitrary and capricious if the agency has failed to follow procedure as required by law, *see* 5 U.S.C. § 706(2)(D), or has entirely failed to consider an important aspect of the problem. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Decisions of the BCMR are entitled to an even higher level of deference. *See Kreis v. Air Force,* 866 F.2d 1508, 1514–15 (D.C.Cir.1989). Military records may be corrected when the Secretary of the Air Force, acting through the board, deems "it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). The Secretary may convene a special selection board if he determines that either the decision of the original selection board involved "material error of fact or material administrative error" or that the board did not have before it "material information." 10 U.S.C. § 628(b)(1)(A)-(B).

■ The plaintiff has the burden of showing by cogent and clearly convincing evidence that the decision was the result of a material legal error or injustice. *See McDougall v. Widnall,* 20 F.Supp.2d 78, 82 (D.D.C.1998); *Walker v. Shannon,* 848 F.Supp. 250, 254 (D.D.C.1994). Any unfavorable information in the plaintiff's file must be found "arbitrary and capricious, or without rational basis, and seriously prejudicial to plaintiff" for it to be correctable by this court. *See Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 813 (Ct.Cl.1979). The BCMR officers are presumed to have discharged their duties lawfully and in good faith. *See McDougall,* 20 F.Supp.2d at 82; *Hoffman v. United States,* 894 F.2d 380, 385 (Fed.Cir.1990). Consequently, "perhaps only the most egregious decisions may be prevented under such a deferential standard of review." *Kreis,* 866 F.2d at 1515.

■ There is good reason for deferring to the judgment of the military regarding personnel matters.

[J]udges are not given the task of running the Army. The responsibility for setting up channels through which [complaints of discrimination, favoritism, et cetera] can be considered and settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953). Furthermore, the "complex, subtle and professional decisions as to the composition, training, equipping, and control of a military force" are vested by the Constitution solely in the legislative and executive branches. *Gilligan v. Morgan,* 413 U.S. 1, 10, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973). It would be damaging to shift the decision from trained military professionals to a non-specialist judiciary. *See Taylor v. United States,* 33 Fed. Cl. 54, 58 (1995).

It is ... settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province, and that courts cannot substitute their judgment for [the Board] when reasonable minds might reach differing conclusions on the same evidence. Thus, although judicial review of military service determinations with monetary consequences is available, the review jurisdiction has been summarized: 'Review of the administrative decision is limited to determining whether the ... action was arbitrary, capricious, ... or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [plaintiff] has been seriously prejudiced.'

*Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983) (citing *Clayton v. United States,* 225 Ct.Cl. 593, 595 (1980)).

 Officers challenging OERs "must overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Guy v. United States,* 221 Ct.Cl. 427, 608 F.2d 867, 867 (Ct.Cl.1979). To overcome this presumption, plaintiffs must do more than prove that the OER seems inaccurate, incomplete or subjective or that the rater now says he scored the plaintiff too low. *See Hary v. United States,* 223 Ct.Cl. 10, 618 F.2d 704, 708 (Ct.Cl.1980). At the very least, the plaintiff must show the presence of factors which should not have been part of the rating process, that there is a clear violation of an objective requirement of a statute or regulation, or that there is a misstatement of a significant hard fact. *See id.* In the context of a complaint regarding the plaintiff's failure to be promoted, the Court of Claims used a two step inquiry: First, does the presence of the defective OERs in the plaintiff's record make the record seem worse than it would have without the OERs so that the plaintiff is prejudiced by their presence? Second, assuming there was prejudice stemming from defective OERs, was it likely the plaintiff would have been promoted anyway? *See id.*

 It is with the realization that courts should give great deference to military decisions regarding personnel that the court turns to the case at bar. The plaintiff first asserts that this court should give less deference than is usually given to the findings of the BCMR because the BCMR offered only a "conclusory" explanation for its decision. While it may be accurate that conclusory explanations by the BCMR are entitled to less deference, *Hary,* 618 F.2d at 708 n. 6, the BCMR in this case provided sufficient findings to support its conclusions. The BCMR found that the plaintiff was not unfairly treated by the failure to forward the OERs for higher levels of endorsement. (Def.'s Facts ¶ 16.) The BCMR noted that the plaintiff's endorser did not recall discrimination against program managers and said that outstanding individual performances were recognized. (Def.'s Facts ¶ 16.) Thus, in concluding that the plaintiff's rater could have forwarded the OERs for a higher level of endorsement but simply chose not to do so, the BCMR adequately stated its rationale.

The plaintiff also points to Air Force Regulation ("AFR") 36–10 to support his contention that promotion potential or promotion eligibility wrongly factored into the level of endorsement the plaintiff's OERs received and, therefore, the OERs should be removed from his file. Pl.'s Mem. at 14. However, AFR 36–10 listed certain criteria that were not to be considered in the evaluation process.[1] This list did not include promotion potential. Thus, *expressio unius est exclusio alterius,* this indicates that the plaintiff's rater was within the bounds of AFR 36–10 in considering the plaintiff's promotion level. *See* 2A Sutherland's Statutory Construction § 47.22 (5th ed.1992) (when certain persons or things are designated "there is an inference that all omissions should be understood as exclusions").

This conclusion is supported by the broad discretion AFR 36–10 gives the Air Force in determining endorsement levels. The regulation is phrased in the permissive sense, i.e., "an indorser *may* defer to a person higher in the rating chain *if desired.*" AFR 36–10, 26 October 1982 (emphasis added). This demonstrates that the plaintiff's rater was not incorrect in factoring in promotion potential when he opted not to pass on the plaintiff's OER for a higher endorsement level. Therefore, the BCMR's decision not to expunge the 1985 and 1986 OERs from the plaintiff's file cannot be characterized as arbitrary and capricious under the APA standard. Thus, the defendant's motion for summary judgment on this issue is also granted.

## IV. Conclusion

For the aforementioned reasons, the court concludes that the plaintiff is barred by the statute of limitations from raising his claim

with respect to whether his OERs should have been endorsed by a higher ranking officer. In addition, the defendant did not act arbitrarily or capriciously by refusing to remove these reports from the plaintiff's personnel file. Accordingly, summary judgment in favor of the defendant is granted and the plaintiff's cross-motion for summary is denied.

---

1. The following criteria were not to be considered in evaluation reports or endorsements to them: (a) charges, investigations, reviews, or other similar actions that were not complete, (b) actions against the officer that resulted in acquittal or a failure to successfully implement an intended personnel action, (c) statements, testimony or data obtained by, or presented to, boards that are confidential under AFR 127–4, (d) actions taken by officers outside the normal chain of command through procedures that represent guaranteed rights of appeal, (e) recommendations for decoration, (f) potential for promotion to general officer, if the officer is below a colonel, (g) race, ethnic origin, gender, age, or religion, (h) temporary or permanent disqualification under AFR 35–99, (i) drug or alcohol abuse rehabilitation programs, (j) previous reports or ratings, (k) performance of duty as a member of a court-martial or board, or a less than favorable evaluation because of the zeal shown as defense or respondent's counsel, and (*l*) Article 15, the Uniform Code of Military Justice, and actions taken under Article 15. *See* AFR 36–10, 3–14, 26 October 1982.