George E. CONE, Jr., Plaintiff,

v.

The Honorable Louis CALDERA, as Secretary of the Army, Defendant.

Civil Action Nos. 97–168(HHK), 97–1428(HHK).

United States District Court, District of Columbia.

Feb. 18, 1999.

**4**

John A. Wickham, Evergreen, CO, for plaintiff.

Fred Haynes, Assistant United States Attorney for the District of Columbia, Washington, D.C., for defendant.

## MEMORANDUM OPINION

KENNEDY, District Judge.

George E. Cone, Jr., an officer in the United States Army, seeks review under the Administrative Procedure Act of a decision by the Army Board for the Correction of Military Records (the "Board"). In that decision, the Board declined to amend Cone's Officer Evaluation Report (the "report") and to reconsider his non-selection to the resident Command and General Staff College. Cone contends that the Board's holdings were arbitrary and capricious. The Army argues that Cone's report and non-selection were consistent with Army regulations, and that his non-selection does not present a justiciable issue to this court.

This case is presently before the court on cross-motions for summary judgment. Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that each party's motion must be granted in part and denied in part.

### I. FACTUAL BACKGROUND

George E. Cone, Jr. served as a captain in the United States Army in Germany and later in combat in Southwest Asia during the Persian Gulf War. In June 1991, Cone received an Officer Evaluation Report for the year ending June 13, 1991. The report contained evaluations by a rater and a senior rater. The rater checked a box marked "promote ahead of contemporaries" and wrote the comment: "CPT Cone has outstanding potential for the most challenging assignments. Select for promotion and [the Command and General Staff College] as soon as eligible." Pl.Ex. D at 47. The senior rater's evaluation includes the following comments:

CPT Cone has developed into an outstanding Company Commander. His company executed a safe and rapid deployment to SWA and performed superbly during offensive operations aimed at the liberation of Kuwait. Consolidation operations and humanitarian assistance provided by his company after cessation of hostilities were particularly outstanding.

Solid potential for advancement. Promote to major and consider for CGSC when eligible.

(This evaluation does not reflect a downturn in performance, rather I have restarted my profile.)

*Id.* The senior rater also indicated Cone's "personal evaluation" by placing an "X" in the second of ten available blocks. *Id.* Although this rating was the second-highest possible, it was below the median, or "center of mass," of the senior rater's distribution. Supp. Statement for George E. Cone, Jr. ¶ 3, Pl.Ex. A at 9.

On March 6, 1993, and March 7, 1994, Cone filed appeals with the Officer Special Review Board, requesting deletion of the senior rater's comments and evaluation. The Board denied both appeals.

Cone then appealed to the Army Board for Correction of Military Records. The latter board dismissed Cone's application for correction, finding that Cone had failed to show that the report "was not prepared in compliance with applicable regulations and policy" and that the senior rater's rating was based on an objective comparison of Cone with other officers of the same grade at the time of evaluation. Pl.Ex. A at 6. Subsequently, Cone was promoted to major, but was twice not selected to attend

the Command and General Staff College. This litigation followed.

## II. STANDARD OF REVIEW

### A. Summary Judgment

A motion for summary judgment should be granted if and only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party's "initial responsibility" consists of "informing the [trial] court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted).

If the moving party meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987). Such evidence must consist of more than mere unsupported allegations or denials and must set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e); *Celotex*, 477 U.S. at 322 n. 3, 106 S.Ct. 2548. If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Administrative Procedure Act

■ It is not the court's function to serve as a super correction board and reweigh the evidence. *Walker v. Shannon*, 848 F.Supp. 250, 254–55 (D.D.C.1994). Ac-cordingly, "review of the administrative decision is limited to determining whether the ... action was arbitrary, capricious, or in bad faith, or was unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantial nature by which [the complainant] has been seriously prejudiced." *Id.* at 255 (citing *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983)). The plaintiff must show by "clear and convincing evidence" that the decision should be overturned. *Id.* at 254 (citing *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed.Cir. 1986)).

### III. ANALYSIS

### A. Cone's Report

■ Army regulations presume that officer evaluation reports, once officially recorded, are administratively correct and "represent the considered opinions and objective judgment of the rating officials at the time of preparation." AR 623–105, ¶ 5–32(a). In federal court, "the burden is on the plaintiff to prove otherwise." *Cooper v. United States*, 203 Ct.Cl. 300, 304 (1973). An officer challenging the accuracy of an evaluation report, therefore, " 'must overcome the strong, but rebuttable presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith.' " *Guy v. United States*, 221 Ct.Cl. 427, 608 F.2d 867, 870 (1979) (citations omitted). The presumption of regularity may be rebutted by proof of legal error and arbitrary, capricious action. See *Skinner v. United States*, 219 Ct.Cl. 322, 594 F.2d 824, 830 (1979). Thus, although "perfect objectivity in the rating process cannot be expected or even hoped for," *id.* at 870–71, a selection board may not properly consider an evaluation report unless it has been "prepared in the manner required by law." *Id.* at 870.

■ Here, Cone alleges that from 1989 through 1992, the senior rater arbitrarily and capriciously failed to follow Army reg-

ulations in rating the potential of his fellow officers and that this error caused him to receive a below center-of-mass evaluation. The relevant regulations prescribe:

(b) The senior rater's evaluation is made by comparing the rated officer's potential with all other officers of the same grade, or grade groupings, as in the case of lieutenants. His or her evaluation is based on the premise that in a representative sample of 100 officers of the same grade or grade grouping (Army-wide), the relative potential of such a sample will approximate a bell-shaped normal distribution pattern.

(c) This distribution pattern is shown in the senior rater's portion of the OER. The pattern means that in a representative sample of 100 officers of the same grade or grade grouping (Army-wide) only one officer can reasonably be expected to be placed in the top block. The probability of having an officer of such potential is 1 in 100.

AR 823–105, ¶ 14–16.

Cone was one of eleven captains rated by the senior rater during the relevant period. Of the eleven captains in the senior rater's profile, seven received "top block" ratings for potential; three (including Cone) received "second block" ratings; and one received a "third block" rating.

The Army correctly notes that "[t]he regulations do not mandate that each senior rater maintain a bell-shaped-curve distribution" and that "since there are thousands of captains in the Army, it is statistically possible that a particular senior rater may have a number of captains that he or she is senior rating that merit placement in the top block." Def.'s Resp. to Pl.'s Statement of Facts ¶ 41; see also Def.'s Opp. at 13 (citing A.R. 623–105, ¶ 4–16(d)(5)(a)). Nevertheless, the regulations plainly apply to every senior rater

and every evaluation, and explicitly set forth specific statistical parameters under which a senior rater's profile can reasonably be expected to fall. See *Voge v. United States*, 844 F.2d 776, 779 (Fed. Cir.1988) (citing *Service v. Dulles*, 354 U.S. 363, 388, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957)) ("It has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all"); *see also* Def.'s Opp. at 12 (citing AR 623–105, ¶ 2–5(b)) (noting that a senior rater's profile is reviewed when the senior rater is considered for promotion).

Under the premise that the probability that a captain merits placement in the top block is 1 in 100, or 0.01, the number of such officers among a "representative sample" of eleven taken from an "Army-wide" population is closely approximated by a binomially distributed random variable with expected value 0.11 and standard deviation 0.33.[1] The senior rater's ranking of seven captains in the top block is more than twenty standard deviations above the expected value, and is significant in Student's T distribution at the 99.9999999% confidence level. See *T Distribution Calculator* <http:// ss.niaes.affrc.go.jp/ pub/ miwa/ probcalc/ student/> (reporting upper probability of $7.04475 \times 10^{-10}$ for $t = 20.8788$ with 10 degrees of freedom).

Even for this small sample, then, the senior rater's profile alone is clear and convincing proof that the senior rater violated ¶ 4–16 in rating at least some of the other captains against whom Cone was compared. See *Castañeda v. Partida*, 430 U.S. 482, 497 n. 17, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) ("As a general rule for ... large samples, if the difference between the expected value and the observed number is greater than two or three standard deviations, then the hypothesis that

---

**1.** The expected number of occurrences in $n$ trials of an event occurring with probability $p$ is $np$. See Anderson et al., Introduction to Statistics 132 (1981). The variance in this number of occurrences is $np (1-p)$. *See id.*

Since the Army-wide population of captains is "very large," the standard deviation can be approximated by $(np (1-p))^{1/2}$. *See id.* at 170. Here $n$ is 11 and $p$ is 0.01, yielding the indicated statistics.

the jury drawing was random would be suspect to a social scientist."); *Moultrie v. Martin*, 690 F.2d 1078, 1084 n. 10 (4th Cir.1982) ("The Supreme Court's rule in *Castañeda* of course can be adjusted for small sample sizes through the use of the student's [sic] t distribution."). These legal errors are sufficient to overcome the presumption of regularity regarding Cone's report.

In deciding Cone's first appeal, the Officer Special Review Board noted that previous profiles by the same senior rater indicated a "persistent failure ... to manage his profile for [captains] in such a way as to preclude any unintended below-[center of mass] ratings." *See* Def. Ex. B at 20 (noting profiles in which 22 of 61, 12 of 19, 6 of 11, and 26 of 32 captains received top-block ratings); *see also* Def. Ex. B at 35 (noting that in all profiles between November 1990 and January 1992, "[the senior rater's] top block was his [center of mass]"); Def Ex. A at 6 (concluding that Cone's potential evaluation "was based on the [senior rater's] comparison of the applicant with other officers of the same grade"). This characterization of the senior rater's errors presupposes that, consistent with ¶ 4–16, the center of mass of an eleven-officer profile can reasonably be located in the top block. It cannot.

Moreover, the senior rater's parenthetical comment that "[t]his evaluation does not reflect a downturn in performance, rather I have restarted my profile" indicates, at the very least, that the senior rater did not intend for his ongoing profile to serve as the basis for an adverse assessment of Cone's performance. *See* AR 623–105, ¶ 3–12.1b (cautioning senior raters that a restart may be necessary to convey the intended personnel evaluation to selection boards and personnel managers). The remainder of the senior rater's comments are wholly laudatory and support Cone's promotion and selection to the Command and General Staff College.

In sum, there is nothing in the senior rater's report that can reasonably be construed as the basis for a below-center-of-mass evaluation. The court therefore finds that the Officer Special Review Board acted arbitrarily, capriciously, without the support of substantial evidence, and contrary to law when it found that the presumption of regularity in ¶ 5–32 must be applied to Cone's report and, accordingly, that the Army Board for the Correction of Military Records should have amended Part VIIa of Cone's report to reflect a center of mass rating.

## B. Cone's Nonselection

■ The finding that military personnel records require correction does not authorize this court to review the merits of a discretionary decision based on those records. *See Murphy v. United States*, 993 F.2d 871, 873–74 (Fed.Cir.1993). In *Murphy*, the Court of Federal Claims had held that an officer was unlawfully released from active duty based on incorrect military records. *Id.* at 873. Without reviewing the trial court's determination that the officer's records were in error, the Federal Circuit held that "the possibility of erroneous records does not transform an otherwise nonjusticiable action into a reviewable one." *Id.* Even after the records were amended, "there were still no tests or standards [the trial court] could apply to determine whether the officer would have been released." *Id.* Thus, the merits of the decision to release the officer were beyond judicial reach, and would remain so even if the appeals court were to order remand for reconsideration based on corrected records. *Id.* at 874. *See also Small v. United States*, 158 F.3d 576, 581 (Fed.Cir.1998) (finding that non-selection for promotion did not present justiciable issue where there were "no tests or standards" to determine whether officer would have been promoted on the basis of a corrected record).

■ Despite the senior rater's express recommendation that Cone be considered for selection when eligible, Pl.Ex. D at 47, Cone states that he was informed by cer-

tain officers that his non-selections were prejudiced by the senior rater's report. Compl. ¶ 17. Cone, however, has not suggested any tests or standards to determine whether he would have been selected to the Command and General Staff College no matter what had appeared in the senior rater's report. Instead, Cone notes that "[t]he selection rate for the entire year group over this four year period is about 50%, with 90% of those selected in the first two considerations." Compl. ¶ 16. These raw statistics do not even indicate a correlation between selection and senior raters' evaluations, let alone a causal relationship. Thus, the court finds that Cone has failed to allege an adequate "nexus or link between that error or injustice and the adverse action" to permit review of his non-selection by this court. See *Muse v. United States*, 21 Cl.Ct. 592, 604 (1990) (citing *Hary v. United States*, 223 Ct.Cl. 10, 618 F.2d 704, 706–07 (1980)).

### IV. CONCLUSION

For the foregoing reasons, the Army's motion for summary judgment will be granted as to reconsideration of the non-selection to the Command and General Staff College, and denied as to amendment of the officer evaluation report. Cone's cross-motion for summary judgment will be granted as to amendment of the report and denied as to reconsideration of the non-selection. An appropriate order accompanies this memorandum.

### ORDER AND JUDGMENT

Pursuant to Fed.R.Civ.P. 58 and for the reasons stated by the court in its memorandum docketed this same day, it is this 18th day of February 1999 hereby

**ORDERED and ADJUDGED** that judgment is entered in favor of the plaintiff as to amendment of the officer evaluation report; and it is further

**ORDERED and ADJUDGED** that judgment is entered in favor of the defendant as to reconsideration of the non-selec-

tion to the Command and General Staff College.