George E. CONE, Jr., Appellee,

v.

Louis CALDERA, Secretary of the Army, Appellant.

No. 99–5110.

United States Court of Appeals, District of Columbia Circuit.

Argued April 17, 2000.

Decided Sept. 12, 2000.

ation Report. The court concluded that the Army's refusal was arbitrary and capricious, and directed the Army to improve Cone's rating. We reverse.

I

Cone served as a captain in the United States Army and commanded an infantry company during the Persian Gulf War.[1] After the war, his supervisors completed an Officer Evaluation Report (OER) assessing his performance from June 14, 1990 to June 13, 1991. An OER is used to evaluate an officer's performance and career potential. *See* Army Regulation 623–105, at ¶ 1–6(a) [hereinafter AR 623–105]. At least two of the officer's superiors prepare the report—a "rater" who directly supervises the officer and a "senior rater" higher in the chain of command. *Id.* ¶ 3–1. Cone's rater was his battalion commander, Lt. Colonel Stephen S. Smith. His senior rater was his brigade commander, Colonel James C. Riley.

The OER form contains blanks that require the rater and senior rater to provide both numerical and narrative assessments. Part VII of the form is reserved for the senior rater, who evaluates the officer "by comparing the rated officer's potential with all other officers of the same grade." *Id.* ¶ 4–16(b). In Part VII(a), the senior rater is to check one of ten blocks that rank the officer's potential against that of all other officers of that grade. According to Army regulations, the evaluation is "based on the premise that in a representative sample of 100 officers of the same grade or grade grouping (Army-wide), the relative potential of such a sample will approximate a bell-shaped normal distribution pattern." *Id.*[2] This means, the regulations continue, "that in a representative

Fred E. Haynes, Assistant U.S. Attorney, argued the cause for appellant. With him on the brief were Wilma A. Lewis, U.S. Attorney, and Michael J. Ryan and R. Craig Lawrence, Assistant U.S. Attorneys.

John A. Wickham argued the cause and filed the brief for appellee.

Before: WILLIAMS, RANDOLPH, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

George E. Cone, Jr. filed suit in United States District Court challenging the Army's refusal to amend his Officer Evalu-

---

1. Cone was promoted to major in October of 1996.

2. In a normal distribution, most of the data points are "clustered near the mean, and the density or relative frequency of the numbers decreases with increasing distance from the mean." DAVID W. BARNES & JOHN M. CONLEY, STATISTICAL EVIDENCE IN LITIGATION 140 (1986). "If the frequencies with which the numbers in the normal population appear as the result of random experiments are plotted on a graph, the figure resembles a bell-shaped curve." *Id.*

sample of 100 officers of the same grade or grade grouping (Army-wide) only one officer can reasonably be expected to be placed in the top block." *Id.* ¶ 4–16(c). Slightly more officers may be ranked in the second block, which represents the top 2–3% of Army officers of that grade, and so on. In a representative sample of 100, it is expected that the majority of officers will be rated in the two middle blocks. *See* J.A. at 147 (illustrative OER form). The senior rater must also write narrative comments addressing the officer's performance in Part VII(b) of the OER. *See* AR 623–105, at ¶ 4–16(d)(2), (3).[3]

Once completed, the Army compares the senior rater's assessment of the officer to the senior rater's rating history for all officers of the same grade—known as the senior rater's "profile." *Id.* ¶¶ 2–5, 4–16(d)(5)(a). "The purpose of the profile is to place the rated officer's OER in perspective by revealing the senior rater's general rating tendency." *Id.* ¶ 4–16(d)(5)(a). By comparing a specific OER to the profile, the Army can discern whether a particular officer performed above, at, or below the "center of mass"—i.e., the median ranking—of the officers ranked by the same senior rater.

In completing Cone's OER, senior rater Riley checked the second block from the top. Of eleven captains rated by Riley during this period, he ranked seven in the top block, three (including Cone) in the second block, and one in the third block. *See* J.A. at 147. According to this profile—which was included in Cone's OER—Riley's center-of-mass ("COM") was the top block. Cone's rating was therefore below center-of-mass for the group even though he was rated in the second-highest block, which corresponds to the top 2–3% of captains Army-wide.

Cone appealed his OER to the Officer Special Review Board (OSRB), which is charged with reviewing requests to correct erroneous military records. *See* AR 623–105, at ¶ 9–2(i). He contended that "[t]he senior rater blocking ... does not accurately portray my potential and may penalize me when viewed by future boards." J.A. at 144. As support for this assertion, he supplied affidavits from Riley and Smith indicating that Riley "did not intend for [Cone's] OER to reflect below center of mass performance," and acknowledging that Riley had failed "to tightly manage" his senior rater profile. *Id.* at 150.

The Special Review Board denied Cone's request. *See* OSRB Decision at 4 (July 2, 1993) (J.A. at 143). The Board rejected the affidavit from Riley, noting that Army regulations preclude "statements from rating officials that they did not intend to evaluate as they did from serving as the basis for favorable action on appeals." *Id.*; *see* AR 623–105, at ¶ 5–32(b)(2), App. ¶ N–2(b)(3). The Special Review Board also noted that Riley had submitted "virtually identical" memoranda in support of appeals by five other captains he had similarly rated below center-of-mass. 1993 OSRB Decision at 2 (J.A. at 141).[4] Although the Board recognized that there "was a persistent failure by the [senior rater] to manage his profile for [captains] in such a way as to preclude any unintended below-COM ratings," it concluded that Cone had failed to adduce "clear and convincing evidence" (as required by the regulations) to rebut the "presumption of regularity" in the OER. *Id.* at 3–4 (J.A. at 142–43) (citing AR 623–105, at ¶ 5–32).

---

**3.** The Army has recently altered its regulations and OER form, and has dispensed with the ten-block rating system. *See* Army Regulation 623–105 (Apr. 1, 1998); DA Form 67–9 (Apr. 1, 1998). The citations in this opinion refer to the regulations and forms that were in effect at the time of Cone's evaluation.

**4.** The Special Review Board further found that of nine below center-of-mass ratings made by Riley and processed by the Army between August 1990 and February 1992, he supported or offered to support appeals by at least seven of the subject officers. *See* 1993 OSRB Decision at 3 (J.A. at 142).

Relying on new statements from his rater and senior rater, Cone once again appealed to the Special Review Board and the Board once again denied Cone's request. *See* OSRB Decision (July 29, 1994) (J.A. at 158–60). In particular, the Board rejected Cone's claim that the comments Riley wrote in the narrative portion of the OER supported a center-of-mass rating. Those words, the Special Review Board said, "are not comparable to" what Riley wrote regarding "other officers [whom] he did in fact place in the top block COM." *Id.* Specifically, the Board noted that Riley characterized Cone as having "solid potential," while he described those he placed in the top block as having "unlimited" or "outstanding potential." *Id.* Similarly, while Riley's recommendation regarding Cone was "promote to major and *consider* for [Command and General Staff College] *when eligible*," for the others it was "promote to major and *select* for [Command and General Staff College] *ASAP*." *Id.* (emphasis added).

Cone next appealed to the Army Board for Correction of Military Records. *See* 10 U.S.C. § 1552(a)(1). Based on the same evidence, Cone urged amendment of his OER to reflect a center-of-mass rating. The Correction Board rejected his appeal, concluding that, despite Riley's inability "to establish a . . . profile for captains that approximated a bell-shaped normal distribution," Cone's rating accurately captured Riley's assessment of Cone's performance compared to that of other officers of the same grade. Correction Board Decision at 4 (Apr. 26, 1995) (J.A. at 128). The Board noted that its conclusion was also "supported by the type of comments used by the [senior rater] to distinguish between a top block officer and a two block officer." *Id.*

After losing before the Correction Board, Cone filed suit in the United States District Court for the District of Columbia, alleging that the Board's denial of his request violated the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and asking the court to correct his records.[5] Specifically, Cone argued that Army regulations require a senior rater to rank officers along a bell-shaped curve, and that Riley's failure to maintain a profile hewn to that curve constituted arbitrary and capricious action. Although the district court found that the regulations "do not mandate that each senior rater maintain a bell-shaped-curve distribution," *Cone v. Caldera,* 46 F.Supp.2d 3, 6 (D.D.C.1999) (internal quotation omitted), it nevertheless held the Army's ranking arbitrary and capricious, *see id.* at 7. After undertaking a statistical analysis, the court determined that "[t]he senior rater's ranking of seven captains in the top block is more than twenty standard deviations above the expected value," and that "the center of mass of an eleven-officer profile" could not "reasonably be located in the top block." *Id.* at 6–7. This, the court said, indicated that the Army had acted arbitrarily and capriciously in declining to amend Cone's OER "to reflect a center of mass rating." *Id.* at 7. The court ordered the Army to make the necessary amendment, *see id.,* and the Army appealed.

## II

The Secretary of a military department, acting through a civilian board, "may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). An officer's OERs are presumed to be "administratively correct" and to "[r]epresent the considered opinions and objective judgment of the rating officials at the time of preparation." AR 623–105, at ¶ 5–32. An officer seeking a correction must prove "clearly and con-

---

5. Cone also challenged his nonselection to the Command and General Staff College, a challenge the district court found nonreviewable. *See Cone v. Caldera,* 46 F.Supp.2d 3, 7–8 (D.D.C.1999). Cone has not pressed this claim on appeal, apparently because it became moot due to his subsequent selection to the College. *See* Cone Br. at 4.

vincingly" that the "presumption of regularity" in the preparation of administrative records should not apply, and that "[a]ction is warranted to correct a material error, inaccuracy, or injustice." *Id.* ¶ 9–7(a) (citing *id.* ¶ 5–32); *see Frizelle v. Slater,* 111 F.3d 172, 177 (D.C.Cir.1997) (noting "strong but rebuttable presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith") (internal quotations omitted).

▉ Although we have jurisdiction to review the decisions of the Correction Board,[6] we do so under an "unusually deferential application of the 'arbitrary or capricious' standard" of the Administrative Procedure Act. *Kreis v. Secretary of the Air Force,* 866 F.2d 1508, 1514 (D.C.Cir. 1989); *see Kidwell v. Department of the Army,* 56 F.3d 279, 286 (D.C.Cir.1995).[7] This deferential standard is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence. *See Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."). We review de novo the district court's ruling, on cross-motions for summary judgment, that the Correction Board acted arbitrarily and capriciously in this case. *See Frizelle,* 111 F.3d at 176; *Kidwell,* 56 F.3d at 286.

Cone contends that Riley's failure to adhere to a bell-curve distribution, and the Army's refusal to correct that failure, constituted arbitrary and capricious agency action in violation of Army regulations. The regulations, however, do not *require* adherence to a bell-shaped curve; rather, they state a "premise" upon which senior raters are to base their evaluations:

> The senior rater's evaluation is made by comparing the rated officer's potential with all other officers of the same grade, or grade groupings. . . . His or her evaluation is based on the premise that in a representative sample of 100 officers of the same grade or grade grouping (Armywide), the relative potential of such a sample will approximate a bell-shaped normal distribution pattern.

AR 623–105, at ¶ 4–16(b). As the district court itself said, this regulation does "not mandate that each senior rater maintain a bell-shaped-curve distribution" in each rating period. *Cone,* 46 F.Supp.2d at 6 (internal quotation omitted).[8] Nonetheless, the district court concluded that Riley's rankings of his eleven officers departed so radically from what statistically would have been expected as to prove that Riley "violated ¶ 4–16 in rating at least some of the other captains against whom Cone was compared." *Id.* To reach this conclusion, the district court applied a test of statistical significance to the distribution of Riley's rankings of the eleven captains. *See id.* at 6 & n. 1.

Even without a statistical analysis, it is clear that Riley was lax in following the rating guidelines. The Special Review Board itself determined that, over a series

**6.** *See Kreis v. Secretary of the Air Force,* 866 F.2d 1508, 1512 (D.C.Cir.1989) (citing *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983)); *see also Frizelle,* 111 F.3d at 176; *Dickson v. Secretary of Defense,* 68 F.3d 1396, 1401–02 & n. 6 (D.C.Cir.1995); *Kidwell v. Department of the Army,* 56 F.3d 279, 283–86 (D.C.Cir.1995).

**7.** Cone's appellate brief asserts that his incorrect OER also violated his rights under the Privacy Act, 5 U.S.C. § 552a(e)(5). Neither

Cone's complaint nor the district court's opinion addresses such a claim, and we therefore do not consider it here.

**8.** *See also Cone,* 46 F.Supp.2d at 6 ("The Army correctly notes that . . . 'since there are thousands of captains in the Army, it is statistically possible that a particular senior rater may have a number of captains that he or she is senior rating that merit placement in the top block.'") (quoting Def.'s Resp. to Pl.'s Statement of Facts ¶ 41).

of rating periods, Riley exhibited "a persistent failure ... to manage his profile for [captains] in such a way as to preclude any unintended below-COM ratings." 1993 OSRB Decision at 3 (J.A. at 142). But Riley's inability to adhere to a bell-curve distribution is not sufficient to render arbitrary the Army's refusal to correct Cone's record. The Army anticipates, and compensates for, the fallibility of individual raters by requiring that each rater's personal profile (indicating the number of officers he or she has placed in each box during the rating period) be included in the OER of each officer he or she reviews. As the regulations state, "[t]he purpose of the profile is to place the rated officer's OER in perspective by revealing the senior rater's general rating tendency." AR 623–105, at ¶ 4–16(d)(5)(a). Put more bluntly, "[t]he profile is meant to be an indicator of the senior rater's tendency to inflate or deflate ratings." *Id.* ¶ 9–7(f). Hence, anyone examining the OER to determine the true ability of the officer can take into account whether his ratings have been rendered by an "easy" or "hard" grader. This is a reasonable response to the problem, and one which makes the Correction Board's refusal to amend Cone's OER reasonable as well.

Moreover, we would be hard pressed to find a reversible "error" in Cone's record even without the clarification provided by the senior rater's profile. Under the regulations, the senior rater's obligation is to compare "the rated officer's potential with [that of] all other officers of the same grade" Army-wide. *Id.* ¶ 4–16(b). The rating box in which Cone was placed represents the top 2–3% of all Army officers of the same rank. There is no evidence in the record that Cone's true abilities place him in the only higher category—a catego-

ry reserved for the Army's top 1%. *See id.* ¶ 4–16(c). Indeed, the principal flaw to which Cone points—Riley's inability to adhere to a bell curve—indicates only that Riley tended to inflate his officers' ratings above the curve: he consistently placed most of his officers in the top few boxes on the rating chart, despite the instruction that those boxes be reserved for the top few percent of all officers in the Army. *See, e.g.,* 1993 OSRB Decision at 3 (J.A. at 142) (noting profile periods in which Riley gave top-block ratings to 22 of 61, 12 of 19, 6 of 11, and 26 of 32 captains). Although this could suggest that Cone's ranking should not have been as high as the one Riley gave him, it certainly does not establish that he should have been ranked even higher.[9]

In support of the contention that he was misrated, Cone offers a post-evaluation affidavit in which Riley states that he "did not intend for [Cone's] OER to reflect below center of mass performance." J.A. at 150. But the Correction Board reasonably refused to credit the affidavit on the basis of Army regulations providing that "[s]tatements from rating officials that they did not intend to rate [an officer] as they did" will "not be used to alter or withdraw a report." AR 623–105, at ¶ 5–32(b)(2); *see id.* App. ¶ N–2(b)(3). The rationale for these regulations is an understanding that raters may attempt to retract otherwise accurate assessments when requested to do so by their disappointed officers. Such post hoc statements by rating officials, the regulations explain, "often reflect retrospective thinking, or second thoughts, prompted by an appellant's nonselection or other unfavorable personnel action claimed to be the sole result of the contested report." *Id.* The Correction Board's refusal to credit Riley's affidavit is

9. Cone notes that Riley wrote on the OER: "This evaluation does not reflect a downturn in performance, rather I have restarted my profile." J.A. at 147. Army regulations permit a rater to restart his profile when necessary to convey his intended evaluation to selection boards and personnel managers. *See*

AR 623–105, at ¶ 3–12.1. Although Riley's comment means that Cone's second-block rating should not be regarded as a downturn in Cone's own performance, it says nothing about where he ranks in comparison with his peers.

particularly reasonable in this case, given that Riley had submitted "virtually identical" memoranda in support of the appeals of many other captains who likewise challenged the below center-of-mass ratings he gave them during the same time period. 1993 OSRB Decision at 2 (J.A. at 141). The Board reasonably regarded these memoranda as reflections of Riley's sympathy for the pleas of his subordinates, rather than as accurate statements of his original intent.

�oberved Cone also asks us to consider affidavits, authored by senior Army officers, that contend that the adjectives Riley used to describe him in the narrative section of the OER indicate a center-of-mass rating. *See* J.A. at 96–99. Both affidavits were written in November of 1998—after the district court complaint was filed and long after the close of the administrative proceedings. Because the affidavits were not part of the administrative record, we may not consider them on appeal. *See Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 284–86 (D.C.Cir.1981); *see also Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). In any event, the affidavits are neither sufficiently specific, nor sufficiently authoritative, to affect the result here.[10]

In conclusion, we observe that the district court's remedial order reveals just what a quagmire we would enter were we to uphold Cone's challenge to his OER. The court directed the Army to amend Part VII(a) of Cone's report "to reflect a center of mass rating." *Cone*, 46

F.Supp.2d at 7. But how should it be amended? Cone interprets the court's mandate as requiring that he be given a top-block rating, *see* Cone Br. at 34–35, as do we.[11] Yet, as already noted, there is no evidence that Cone qualifies as one of the Army's top 1%. Moreover, even if Riley were guilty of rampant grade-inflation, there is no evidence that the seven officers to whom he gave top-block rankings still did not merit higher rankings than Cone. Thus, if Cone were moved to the top block to achieve a center-of-mass result, would not those seven officers have grounds for appeal, complaining that their own comparative positions had been unfairly deflated? Indeed, would not the same be true for all captains, Army-wide, whose senior raters had placed them in the top block? The knowledge that "correcting" Cone's grades would ultimately require us to reassess the relative rankings of his entire cohort—a task for which a court is spectacularly unsuited—only further confirms the wisdom of deferring to the reasonable judgment of the Correction Board. *See Kreis*, 866 F.2d at 1514 ("[T]he alteration of a record may correct one injustice only to commit another, or perhaps only to incur some other equally significant institutional cost. All such balancing of considerations is to be done by the Secretary, free of judicial second-guessing."); *see also Sargisson v. United States*, 913 F.2d 918, 922 (Fed.Cir.1990) ("A court lacks the special expertise needed to review reserve officers' records and rank them on the basis of relative merit.").

10. By the same token, we decline to give any weight to the Special Review Board's conclusion that the words Riley used in Cone's OER were "not comparable" to the words he used to describe other officers whom "he did in fact place in the top block COM." 1994 OSRB Decision (J.A. at 159). The Army successfully argued below that the court should deny Cone discovery of the OERs of the other officers upon which this comparison was based, even in redacted form, on the ground that they were not part of the administrative record before the Correction Board. *See Cone v. Caldera*, 46 F.Supp.2d 3, 4–5 (D.D.C.

1998) (J.A. at 33–34). But if that is true, then the comparisons cannot provide substantial evidence to support the Board's decision. On the other hand, if the comparisons were before the Board, by keeping them out of the appellate record the Army has deprived this court of any basis for concluding that the Board's characterizations are valid.

11. The other alternative—lowering the ratings of some officers now in the top block in order to make the second block the center-of-mass—would only further complicate the problem discussed in the following text.

### III

At bottom, Cone argues not that he was graded too low in comparison to all officers of his rank, but that he did not get the full benefit of his superior's inflated grading curve. Because we conclude that this does not constitute cause for requiring the Correction Board to amend Cone's evaluation report, we reverse the decision of the district court.