# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 12, 2023          Decided July 28, 2023

No. 22-5045

JASON L. SISSEL,
APPELLANT

v.

CHRISTINE E. WORMUTH, IN HER OFFICIAL CAPACITY AS
SECRETARY OF THE ARMY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-00356)

———

*Bradley A. Hyde* argued the cause for appellant.  With him on the briefs were *Adriana Erquiaga*, *Helen G. Kirkby*, *Carolyn G. Hudson*, *Erik Jensen*, *Michael A. David*, and *Rochelle Bobroff*.

*John B. Wells* and *Melanie L. Bostwick* were on the brief for *amicus curiae* Military-Veterans Advocacy, Inc. in support of appellant.

*John K. Roche* was on the brief for *amici curiae* Connecticut Veterans Legal Center, et al. in support of appellant.  *David Aaron* entered an appearance.

*Whitney Cloud*, *Peter Karanjia*, and *Elizabeth J. Jones* were on the brief for *amici curiae* Eugene R. Fidell and Franklin D. Rosenblatt in support of appellant.

*Sean R. Janda*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Charles W. Scarborough*, Attorney. *John Haberland*, Special Assistant U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney, entered appearances.

Before: SRINIVASAN, *Chief Judge*, MILLETT and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*: In 2003, while on deployment with the Army in Iraq, Jason Sissel suffered back and leg injuries in a motor vehicle accident. The Army's medical evaluations determined that his condition rendered him unfit for duty. Depending on the extent of his disability, Sissel could either be "retired" from service, in which case he would receive retirement benefits, or "separated" from service, in which case he would receive severance pay but no retirement benefits. The Secretary of the Army gave Sissel a disability rating of 20%, below the 30% threshold necessary to qualify him for retirement from service.

Sissel brought an action against the Army in district court, challenging the Secretary's assignment of a 20% disability rating. According to Sissel, the Secretary should have given him a 30% rating, consistent with the rating he had received from the Department of Veterans Affairs in a separate

assessment conducted by the VA to determine his eligibility for veterans' disability benefits.

The district court granted summary judgment in favor of the Army. We conclude, however, that the Secretary's approach when determining Sissel's disability rating was inconsistent with the applicable statute and regulations. We thus vacate the grant of summary judgment to the Army and remand for further proceedings.

## I.

### A.

If a military servicemember incurs a "physical disability . . . while entitled to basic pay," the Secretary of the relevant military department determines if the disability renders the servicemember "unfit to perform the duties of the member's office, grade, rank or rating." 10 U.S.C. §§ 1201(a), 1203(a). If the servicemember has been rendered unfit, the servicemember may be either "retired" or "separated" from service, depending on the degree of disability. *Id.* §§ 1201(a), 1203(a). A retired servicemember is eligible to receive retirement benefits, whereas a separated servicemember receives only severance pay with no retirement benefits. *See id.* §§ 1201(a), 1203(a).

For a servicemember with fewer than 20 years of service, the member can qualify for retirement if the relevant Secretary finds that "the disability is at least 30 percent under the standard schedule of rating disabilities." *Id.* § 1201(b)(3)(B). If the servicemember's disability falls below that 30% threshold, "the member may be separated from the member's armed force, with severance pay," but not retirement benefits. *Id.* § 1203(a); *see also White v. Mattis*, No. 18-cv-02867, 2019 WL 6728448,

at *1 (D.D.C. Dec. 11, 2019) ("Soldiers who are separated are entitled only to severance pay, while soldiers who are retired receive, *inter alia*, lifetime retired pay, healthcare, and commissary privileges.").

B.

For Army personnel, the Secretary of the Army makes fitness and ratings determinations under a process known as the Physical Disability Evaluation System (DES). *See* Dep't of the Army, Army Regul. 635-40, Disability Evaluation for Retention, Retirement or Separation (2017) (2017 Army Regul. 635-40). The specific version of the DES used to evaluate Sissel's disability is the legacy DES (LDES). *See id.* ¶ 4–1(d)(1). The LDES process consists of two steps.

At the first step, "[w]hen a commander believes that a soldier of his or her command is unable to perform the[ir] duties," the commander "refer[s] the soldier to the responsible [treatment facility] for evaluation." Dep't of the Army, Army Regul. 635-40, Physical Evaluation for Retention, Retirement, or Separation ¶ 4–8 (1990) (1990 Army Regul. 635-40). After that evaluation, if the soldier appears "not medically qualified to perform duty," the soldier goes before a Medical Evaluation Board (MEB). *Id.* ¶ 4–9. The MEB then makes a decision "as to the soldier's medical qualification for retention." *Id.* ¶ 4–10; *see also* 2017 Army Regul. 635-40 ¶ 4–7(a). If the MEB determines the soldier does not meet retention standards, it will recommend referral of the soldier to a Physical Evaluation Board (PEB). 1990 Army Regul. 635-40 ¶ 4–10.

The PEB's review is the second step of the process. The PEB initially determines whether the soldier is physically fit or unfit to perform the duties of their role. *Id.* ¶ 4–19(a)(1); 2017 Army Regul. 635-40 ¶¶ 4–19, 4–22, 5–1. If the soldier is unfit,

the PEB then decides the percentage rating for each "unfitting compensable disability," using the Veteran's Administration Schedule for Rating Disabilities (VASRD). *See* 1990 Army Regul. 635-40 ¶ 4–19(i); 38 C.F.R. ch. 1, pt. 4 (VASRD). The VASRD contains a schedule of medical conditions, each identified by a diagnostic code and assigned a disability rating percentage or range of percentages. *See, e.g.*, 38 C.F.R. § 4.71a.

"An unfitting, or ratable condition, is one which renders the soldier unable to perform [his] duties . . . in such a way as to reasonably fulfill the purpose of his or her employment on active duty." 1990 Army Regul. 635-40 ¶ 3–5(c). Under the applicable regulations, a finding of unfitness may be based on the effect of one disability standing alone or on "the combined effect of two or more disabilities." *Id.* ¶ 4–19(f)(4). Correspondingly, a disability is compensable either if it, "in itself, is unfitting or [if it] contributes to the unfitting condition." *Id.* ¶ 4–19(f)(6)(b). If the PEB finds that a particular condition neither itself renders the soldier unfit nor contributes to a finding of unfitness, the Board must list that condition with an annotation indicating that the condition is "non-ratable." *Id.* ¶ 3–5(d).

In 2008, Congress codified those principles, requiring the Secretary (and by extension the Boards that conduct the LDES), "[i]n making a determination of the rating of disability," to "take into account all medical conditions, whether individually or collectively, that render the member unfit." 10 U.S.C. § 1216a(b). Army regulations similarly provide that a soldier may be determined unfit based on "the overall effect of two or more impairments even though each of them, standing alone, would not cause the Soldier to be found unfit because of physical disability." 2017 Army Regul. 635-40 ¶ 5–4(g). Additionally, "unfitness due to overall or

combined effect may include one or more conditions determined to be unfitting in combination with an independently unfitting condition." *Id.*

If a soldier concurs with the PEB's rating decisions, the PEB's recommendation is finalized and approved on behalf of the Secretary of the Army. Since 2008, however, a soldier discharged between September 11, 2001, and December 31, 2009, with a disability rating percentage of 20% or less may appeal to the Physical Disability Board of Review (PDBR). The PDBR was established pursuant to the National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 1643, 122 Stat. 3, 465–67 (codified at 10 U.S.C. § 1554a), to "address the disparities in the disability ratings issued by the military departments in the Department of Defense and the VA" during that period. *U-Ahk-Vroman-Sanchez v. U.S. Dep't of Def.*, No. 19-cv-3141, 2021 WL 394811, at *2 (D.D.C. Feb. 4, 2021).

Following its review, the PDBR may "recommend to the Secretary" the issuance of a new disability rating, the modification of a previous rating, the recharacterization of a soldier's separation to include medical retirement, or no change. *See* 10 U.S.C. § 1554a(d)(1)–(4). If the PDBR "makes a recommendation not to correct the military records," its recommendation is final. *Id.* § 1554a(e)(3). Otherwise, the Secretary "may correct the military records" pursuant to the PDBR's recommendation. *Id.* § 1554a(e)(1).

At that point, if the soldier remains dissatisfied with the Secretary's determination, he may seek judicial review under the Administrative Procedure Act. *See* 5 U.S.C. § 702.

7

C.

1.

Jason Sissel enlisted in the Army and was deployed to Iraq during Operation Iraqi Freedom. In 2003, Sissel was involved in a motor vehicle accident, suffering injuries to his back and right leg. He underwent spinal fusion surgery but continued to suffer significant back pain along with pain and weakness in his right leg.

In February 2005, Sissel's surgeon recommended that an MEB assess Sissel to determine his ability to perform his duties. An MEB was convened the next month. The MEB diagnosed Sissel with degenerative disc disease of the lumbar spine, as well as dense hypesthesia (numbness) of the right foot and mild weakness in the right leg. *See Sissel v. McCarthy*, No. 19-cv-356, 2021 WL 6062832, at *3 (D.D.C. Dec. 22, 2021). The MEB determined that Sissel failed to meet retention standards and referred him to a PEB.

In June 2005, a PEB was convened to review Sissel's fitness to serve. The PEB's report described Sissel's disability as "chronic back pain and right-leg weakness." *Sissel*, 2021 WL 6062832, at *3 (quotation marks omitted). The report linked the disability to a single VASRD code (number 5241), which covers spinal fusions. *See* 38 C.F.R. § 4.71a. The PEB concluded that Sissel's injuries prevented his performance of duty. *Sissel*, 2021 WL 6062832, at *3. The Board recommended a combined disability rating percentage of 10% under VASRD code 5241 and a disposition of separation with only severance pay. *See id.* The PEB's report did not annotate any conditions as not contributing to unfitness and thus non-ratable.

Sissel concurred with the PEB's decision, and the decision then was finalized on behalf of the Secretary. In October 2005, the Army honorably discharged Sissel.

2.

While Sissel worked his way through the LDES, he also applied to the Department of Veterans Affairs for disability benefits based on the same injuries. VA disability benefits are distinct from and offset medical severance and retirement benefits. *See* 10 U.S.C. § 1212(d); 38 U.S.C. §§ 5304–05.

The VA diagnosed Sissel with chronic back pain and a right leg injury associated with the back injury. Based on that diagnosis, the VA assigned two disability ratings under two separate VASRD codes. Under the first code, the VA rated Sissel as 20% disabled for his back injury. And under the second code, the VA rated him as 10% disabled for his right leg injury. The VA thus assigned a total rating percentage of 30%.

3.

Years later, in 2014, Sissel requested that the PDBR increase his disability rating from 10% to 30%. He maintained that the PEB should have assigned his back injury a 20% rating, as the VA had done, rather than the 10% the PEB had assigned in 2005. He further contended that the PEB erroneously failed to separately rate his leg condition at 10%.

The PDBR recommended granting Sissel's request to raise his back injury rating to 20% but declining to assign his leg injury a separate rating. The updated, recommended total disability rating thus was 20%, still not enough to qualify for medical retirement. In assessing the PEB's decision to

combine Sissel's back and leg injuries under a single VASRD Code, the PDBR explained that the combined rating reflected the PEB's judgment that the constellation of his conditions rendered him unfit. The Deputy Assistant Secretary, on behalf of the Secretary, accepted the PDBR's recommendation.

4.

In 2019, Sissel sued the Secretary in the district court, alleging that the Secretary's decision to adopt the PDBR's recommendation was arbitrary, unsupported by substantial evidence, and contrary to law. The parties jointly moved for a remand to the PDBR to reconsider Sissel's disability rating, and the district court granted the motion.

The PDBR engaged in a "de novo reconsideration" on remand but ultimately made the same recommendation: a 20% total rating, with no separate rating for the leg injury. *Sissel*, 2021 WL 6062832, at *4 (quotation marks omitted). The PDBR again explained that the PEB's decision to combine Sissel's back and leg conditions under a single disability rating reflected a judgment that "'the constellation of [his] conditions' rendered him unfit for duty." *Id.* The PDBR added that it considered each "bundled condition[]" to be "reasonably justified as separately unfitting" unless a preponderance of evidence indicates the condition would not cause the member to be found unfit. *Id.* (alteration in original) (quotation marks omitted). The PDBR reached the same conclusion as it had before: "the back condition was reasonably considered unfitting at separation, but the preponderance of evidence showed the [leg injury] would not have, on its own, caused [Sissel] to be . . . found unfit." *Id.* at *4 n.16.

The Deputy Assistant Secretary, acting on the Secretary's behalf, accepted the PDBR's recommendation. The Deputy

Assistant Secretary also reviewed an informal review of Sissel's case conducted by a doctor who was an advisor for the Army Review Boards Agency. That doctor determined that Sissel's right-leg condition would require its own rating if it either "contributed significantly to the finding of unfitness" or was "an absolute stand-alone unfitting condition." *See Sissel*, 2021 WL 6062832, at *5 (quotation marks omitted). Finding neither of those to be true of Sissel's right-leg condition, the doctor concluded that his unfitness instead was predominantly due to his back condition. *See id.* The Deputy Assistant Secretary likewise determined that Sissel's right-leg condition was neither separately unfitting nor contributed "significantly" to his unfitness.

Sissel's suit then returned to the district court, which granted summary judgment to the Secretary. The court held that the Secretary's decision was not contrary to law, and the court further held that the Secretary's decision was adequately explained and supported by substantial evidence. *See id.* at *7–13.

## II.

### A.

Before addressing Sissel's challenges to the Secretary's decision, we first consider the appropriate standard of review. The Secretary submits that we should conduct an "unusually deferential application" of Administrative Procedure Act review. Sec'y Br. 28. We disagree.

We have said that "[i]t is the longstanding practice of this court to review a decision of a military corrections board under an 'unusually deferential application of the "arbitrary or capricious" standard' of the APA." *Roberts v. United States*,

741 F.3d 152, 158 (D.C. Cir. 2014) (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)). We articulated that approach in *Kreis*, which involved a challenge to a decision of the Air Force Board for the Correction of Military Records. The statute empowering military corrections boards, 10 U.S.C. § 1552(a)(1), allows for correction of "any military record . . . *when the Secretary considers it necessary* to" do so. 10 U.S.C. § 1552(a)(1) (emphasis added). That language, we reasoned, "substantially restrict[ed] the authority of the reviewing court to upset the Secretary's determination" because "[i]t is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act '*when he considers it necessary.*'" *Kreis*, 866 F,2d at 1514 (quoting 10 U.S.C. § 1552(a)(1)). We thus concluded that "decisions of the Board are reviewable under the APA, albeit by an unusually deferential application of the 'arbitrary and capricious' standard." *Id.*

The question here is whether the statute empowering the PDBR, 10 U.S.C. § 1554a, exudes similarly unusual deference to the Secretary. Under that statute, the PDBR "*may* . . . recommend to the Secretary*" that a separation be recharacterized or a rating be modified or issued and the Secretary "*may* correct the military records . . . in accordance with a recommendation made by the [PDBR]." 10 U.S.C. § 1554a(d), (e)(1) (emphasis added). True, the statute's use of "may" indicates that the PDBR and the Secretary have the discretion, rather than the obligation, to act. *See, e.g.*, *Biden v. Texas*, 142 S. Ct. 2528, 2541 (2022). But a great deal of agency action is discretionary, and the default standard of review still is ordinary arbitrary-and-capricious review. In *Kreis*, we concluded that an unusually deferential application of that standard was warranted because section 1552(a)(1) confers uncommon discretion by authorizing the Secretary to act when she "considers it necessary." 10 U.S.C. § 1552(a)(1); *see*

*Kreis*, 866 F.3d at 1514. Section 1554a contains no comparable language.

Contrary to the Secretary's contention, our reliance on ordinary arbitrary-and-capricious review should not threaten to "destabilize military command and take the judiciary far afield of its area of competence." *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000). To be sure, determining whether a condition renders a soldier unfit for service calls for military judgment. But the cases in which we have emphasized the need for a heightened standard of review to safeguard military judgment have involved decisions concerning active personnel, such as performance reviews and promotion decisions. *See, e.g.*, *Roberts*, 741 F.3d at 155–57; *Cone*, 223 F.3d at 790–92; *Kreis*, 866 F.2d at 1509. The PDBR, however, is tasked with reviewing disability rating decisions that will determine the compensation of soldiers who left the military no later than 2009. *See* 10 U.S.C. § 1554a(b). Reviewing those decisions under ordinary arbitrary-and-capricious review would not "destabilize military command." *Cone*, 223 F.3d at 793.

Of course, even ordinary arbitrary-and-capricious review is "[h]ighly deferential" and "presumes the validity of agency action." *AT&T Corp. v. FCC*, 220 F.3d 607, 616 (D.C. Cir. 2000). The Secretary's decision is thus entitled to that kind of deference.

## B.

We now turn to the Secretary's decision. The PDBR's recommendation, which the Secretary accepted, is amenable to more than one interpretation. But no matter how one reads that recommendation, the Secretary, in accepting it, did not act in accordance with the law governing disability ratings. The Secretary either (i) concluded that Sissel's leg condition

contributed to his unfitness but nonetheless did not assign it a disability rating, or (ii) concluded that Sissel's leg condition was not unfitting because it neither separately rendered Sissel unfit nor "significantly" contributed to his unfitness. Either way, the Secretary's decision was contrary to law.

1.

Certain aspects of the PDBR's recommendation suggest a conclusion that Sissel's leg condition contributed to his unfitness together with his back injury. According to the PDBR, the PEB had determined that the "constellation" of Sissel's back and leg injuries was unfitting. *Sissel*, 2021 WL 6062832, at \*4. The record contains support for the PDBR's understanding of the PEB's decision. The PEB listed both of Sissel's injuries—chronic back pain and right leg weakness—under a single diagnostic code. *Id.* Importantly, in listing both conditions under a single code, the PEB did not annotate the leg condition as non-ratable. Under the relevant regulations, that omission indicates that the PEB found the two conditions collectively unfitting. *See* 1990 Army Regul. 635-40 ¶ 3–5(d).

To the extent the PEB found Sissel's right-leg condition collectively unfitting, the PDBR's ensuing recommendation in some respects suggests agreement that Sissel's leg condition contributed to his unfitness together with his back condition. The PDBR undoubtedly found the latter condition separately unfitting: after "de-coupl[ing]" the back and leg conditions, the PDBR concluded that "the back condition was reasonably considered unfitting at separation" and assigned "a disability rating of 20% for the back condition, coded 5241." *Sissel*, 2021 WL 6062832, at \*4 n.16. But the PDBR did not expressly disclaim the PEB's explanation that the "constellation" of Sissel's back and leg injuries also was unfitting. Moreover, the PDBR recommended a 20% disability rating "for the combined

conditions of 'back pain *and right leg weakness*,'" *id.* at \*4 (emphasis added), consistent with a conclusion that Sissel's leg injury contributed to unfitness together with his back condition.

If the PDBR concluded that Sissel's leg injury, along with his back injury, was collectively unfitting, the PDBR was obligated to give Sissel's leg condition a rating. But the PDBR did not do so, meaning the Secretary acted contrary to law in adopting the PDBR's conclusion.

Longstanding Army regulations confirm an obligation to rate any compensable disability—that is, any disability that "in itself, is unfitting *or contributes to the unfitting condition*." 1990 Army Regul. 635-40 ¶ 4–19(f)(6)(b) (emphasis added); *see also id.* ¶ 4-19(i); 2017 Army Regul. 635-40 ¶ 5–5. That is so even if, as here, one of the conditions in the constellation of collectively unfitting conditions would also, on its own, suffice to render the soldier unfit. *See* 2017 Army Regul. 635-40 ¶ 5–4(g). To the same effect, the governing statute establishes that, "[i]n making a determination of the rating of disability of a member of the armed forces . . . , the Secretary concerned shall take into account *all* medical conditions, whether individually *or collectively*, that render the member unfit." 10 U.S.C. § 1216a(b) (emphasis added).

Thus, to the extent the PDBR concluded that Sissel's leg condition rendered him collectively unfit when considered together with his back condition, it was obligated to assign a rating to the leg condition. By extension, the Secretary, in accepting the PDBR's recommendation to give no rating to Sissel's leg condition, acted contrary to law insofar as the PDBR concluded that his leg condition was collectively unfitting together with his back condition.

15

2.

In certain respects, however, the PDBR indicated that Sissel's leg condition did *not* contribute to his unfitness—i.e., that it was *not* collectively unfitting together with his back condition. Most notably, the PDBR stated that Sissel's "decreased RLE [right lower extremity] sensation would not be anticipated to have *any* impact on [Sissel's] duty performance and there was no evidence in the record that it did." *Sissel*, 2021 WL 6062832, at *4 n.16 (emphasis added). And the Secretary, in adopting the PDBR's recommendation, said that she concurred that Sissel's leg condition was not separately unfitting and did not contribute to his unfitness.

Insofar as the Secretary determined that Sissel's leg condition was not collectively unfitting, though, the Secretary referenced too stringent a standard. The Secretary, echoing the conclusion of the doctor whose informal advice the Secretary reviewed, stated that Sissel's leg condition did not contribute "significantly" to his unfitness. *Sissel*, 2021 WL 6062832, at *5. But according to the terms of the Army's regulations, any "contribution"—regardless of level of significance—calls for a rating. *See* 1990 Army Regul. 635-40 ¶ 4–19(f)(6)(b); 2017 Army Regul. 635-40 ¶ 5–5. That is also the most natural reading of the relevant statute: when multiple conditions "collectively . . . render the member unfit," the Secretary "shall take into account *all*" of those medical conditions. 10 U.S.C. § 1216a(b) (emphasis added). The fact that a condition contributes to a soldier's unfitness is enough, and the Secretary's apparent addition of a "significantly" criterion naturally raises questions about what degree and manner of contribution is thought to suffice, questions that the terms of the statute and regulations do not make salient.

The Secretary's "significantly" add-on is also undermined by the fact that, under the LDES, the insignificance of a condition that contributes to unfitness is taken into account in the rating ultimately assigned to the condition, not in whether the condition should get any rating in the first place. The applicable regulations explain that, "[o]ccasionally a medical condition which . . . contributes to unfitness for military service is of such mild degree that it does not meet the criteria for even the lowest rating provided in the VASRD." 1990 Army Regul. 635-40 app. ¶ B–15. In that situation, the regulations instruct the PEB to generally "[a]pply a 0 percent rating" even though the condition does contribute (albeit mildly) to the soldier's unfitness. *Id.* The regulations thus presume that every condition contributing to unfitness—no matter how insignificant the contribution—receives a rating, even if a rating of 0. That is inconsistent with the Secretary's indication that Sissel's leg condition was not unfitting (and hence non-ratable) because it did not "significantly" contribute to his unfitness. Any assumption that a medical condition, to receive a rating, must contribute "significantly" to unfitness thus is contrary to law.

\* \* \* \* \*

For the foregoing reasons, we vacate the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

*So ordered.*